HOWARD L. CROOK, APPELLEE, v. EDWARD M. O'SHEA, DOING BUSINESS AS O'SHEA MOTOR COMPANY, APPELLANT.

FILED FEBRUARY 8, 1934. No. 28672.

*Stewart, Stewart & Whitworth,* for appellant.

*O. B. Clark, William Niklaus* and *J. E. Mockett, contra.*

Heard before GOOD and EBERLY, JJ., and MESSMORE, RAPER and YEAGER, District Judges.

YEAGER, District Judge.

This is an action at law by Howard L. Crook, plaintiff, appellee herein, against Edward M. O'Shea, doing business as O'Shea Motor Company, defendant, appellant herein. The petition contains two causes of action.

In the first cause of action, the plaintiff alleged that on the 14th day of April, 1931, he entered into an oral agreement with the defendant, by the terms of which he agreed to pay defendant $818 and the defendant agreed to sell to him one Ford Model "AA" truck and to provide plaintiff with regular, continuous and steady employment with Abel Construction Company, the employment to consist of hauling material from May 1, 1931, until weather conditions rendered road construction work in Nebraska impracticable because of the freezing of materials used in road construction, for which hauling the plaintiff would receive 20 cents a mile for each mile traveled with a loaded truck plus 5 cents extra for the first mile of each trip, and the average daily compensation would be not less than $21.50 over and above the costs of gasoline, lubricating oil and necessary repairs to his truck, and that gasoline and lubricating oil could be purchased from Abel Construction Company at Lincoln wholesale prices. He alleged that, as an inducement and as a part of the negotiations leading to the making of the said contract, the

defendant represented that he had a contract with Abel Construction Company whereby defendant was empowered to make the contract for hauling and for the purchase of gasoline and lubricating oil at wholesale prices; that the plaintiff, pursuant to the said agreement and in consideration of the promises of the defendant, purchased and received the truck and paid the defendant the sum of $818; that the defendant failed and refused to secure employment for the plaintiff with Abel Construction Company, except a certain part time employment for which plaintiff received the sum of $393.11 over and above the cost of gasoline, lubricating oil and repairs, whereas, if he had been furnished employment pursuant to the agreement, he would have collected for his services the sum of $3,590.50; that by reason of the breach of contract on the part of the defendant he has sustained damages in the sum of $2,997.39.

The second cause of action is similar to the first, the material difference being that one Leslie Yost claims to have entered into a contract with the defendant identical with that of the plaintiff herein, except as to dates, description of truck and amount of damages. Yost has assigned his cause of action to the plaintiff and plaintiff has instituted action thereon herein.

The defendant filed a general demurrer to the petition, which was overruled, and thereafter filed an answer in which he alleged that he sold the two Ford trucks in question at the price of $818 each, upon which trucks each of the parties paid down $250 and gave a note with a conditional sales contract for the balance, which notes and contracts were transferred and later foreclosed on account of default in payment of said notes.

A trial to the jury was had, which resulted in a verdict and judgment in favor of plaintiff for $437.50 on his first cause of action and $387.50 on his second cause of action.

If, upon his pleadings and proof, the plaintiff was entitled to a recovery at all, the judgment in his favor was not excessive, so therefore this point requires no discus-

sion. The case must be decided on the question of whether or not the plaintiff set forth or proved or set forth and proved a cause of action recognizable in law.

We have set forth in some detail the issues as presented by the pleadings. With the purpose of supporting these issues as to the first cause of action, the plaintiff has adduced the following uncontroverted facts. On or about April 15, 1931, the plaintiff executed a written order for the purchase of a Ford truck from the defendant at the price of $818 on which he paid $250, leaving a balance of $568 to be paid in twelve monthly instalments of $54 each. The order was obtained by one Wisser, an agent of the defendant. The order was accepted by the defendant and on April 17, 1931, a promissory note and a conditional sales contract were contemporaneously executed by plaintiff and Ana L. Crook, his wife, and accepted by the defendant. The note was for the balance of the purchase price of the truck in question and finance charges and the conditional sales contract covered the same truck. The order, the note and the contract are in usual and customary form and contain no reference to employment.

As to the second cause of action, the evidence in this connection is substantially the same, except as to the dates and amounts and parties executing the instruments referred to. However, in addition, there appears upon the written order the following: "For construction work with Abel Const. Co."

The plaintiff, as has already been noted, seeks to recover for a breach of oral contracts. In support of the claimed contract of employment contained in the first cause of action, the plaintiff testified in part as follows: "Q. What did Mr. Wisser say? A. Well, he says Mr. O'Shea had a contract with Abel Construction Company to place ten new trucks on the job with them with ten men. * * * Q. Go ahead and give the substance of the conversation. A. Mr. O'Shea told me about the job. Q. What did he tell you about it? A. He said he had a contract with Abel to put on ten new trucks with dual

wheels. I told him I had looked at it on the floor and had been talking about it with Mr. Wisser, and he says, 'You will start the first of May and it will be steady, continuous employment until freezing weather sets in, if you are able to finance one of these trucks.' He says I would make $20 to $25 a day, and I told him it sounded all right to me, and he wanted to know if I was able to finance it, and I told him I thought I was, and he wanted to know the price Wisser had made, and I told him $818 and I would have to have $250 down, and he said he didn't want to let any of these go at $250 down but being Mr. Wisser told you that it was O. K. Q. Did he tell you who was furnishing this work to you? A. He told me that he was furnishing the work through the Abel Construction Company. Q. Now, did Mr. O'Shea mention gas or oil? A. Yes. Q. State what he said? A. He said, 'You will also be able to buy gas and oil at wholesale, wholesale Lincoln prices out on the job.' * * * Q. Who did you have that transaction with, with Mr. Wisser or Mr. O'Shea? A. After I accepted the proposition through Mr. O'Shea I signed the order for the truck in the presence of Mr. Wisser."

There is other testimony along the same line, but, in the main, these questions and answers set forth plaintiff's claim with reference to employment and income to be derived therefrom. The plaintiff claims that it was these representations and others of like character and import which caused him to purchase the truck.

As to the second cause of action, Yost, the other contracting party, has testified in part as follows: "Q. Now, I will ask you to state the substance of the conversation between yourself and Mr. Wisser at your home the first part of April, 1931, with respect to employment, if any, by the O'Shea Motor Company, or O'Shea, the defendant. A. Well, he came to my house and told me that Mr. O'Shea had a proposition whereby if I would purchase one of his Model "A" dump trucks Mr. O'Shea would furnish me with a job with the Abel Construction Company and the

work would start May 1st and last until freezing weather occurred which made road work impossible, and he also said that the job would pay $18 to $20 a day, net. Q. Did he tell you in any particular the kind of work it was? A. He said it would be hauling road material for paving and graveling roads. Q. Did he mention where and in what locality the work was to be done? A. He said it was all work that would be in and around Lincoln, near Lincoln, that the Abel Construction Company had several contracts that would furnish plenty of work and Mr. O'Shea had a contract with Abel to furnish this work. Q. Now, did you have any further conversation with Mr. Wisser at that time? A. Yes; he also said that Mr. O'Shea would sell ten trucks, not to exceed ten trucks so that the workmen could be kept busy and so there wouldn't be too many trucks on the job. Q. Did he tell you—did he mention what he meant by 'net?' A. Yes; he said I ought to make $18 to $20 a day net to me, over and above gas and oil. * * *· Q. Was there anything other than that said at that time that you recollect? A. Well, he said, 'I have known you a long time, I wouldn't just want to be selling you a truck,' he says, 'Mr. O'Shea has this job and I am sure you can make plenty of money if you have got the money to buy one of these trucks, he will furnish you with a job.' * * * Q. You may state what Mr. O'Shea said in substance as near as you can recall. A. Mr. O'Shea said, 'I have a contract with the Abel Construction Company to furnish ten trucks for hauling road material for the Abel Construction Company,' and he said, if I had the money to buy one of these trucks he would furnish me with a job that would pay· me from $18 to $20 a day, net. Q. Did he say how long this job would last? A. Yes. Q. What did he say about that? A. He said it would last from the 1st of May until freezing weather set in so road work was impossible. Q. Did he say what kind of work it was? A. Yes; hauling material, gravel, sand, cement for the Abel Construction Company. * * * Q. You may state whether or not you accepted that

proposition or what you did with respect to what Mr. Wisser and Mr. O'Shea told you? A. Well, I told Mr. O'Shea that if he could furnish me with a job I would buy one of them trucks; if I could make $18 to $20 a day net for that period of time I would be interested."

If defendant is to be bound on a contract of employment with Yost he must be. bound on the basis of the language quoted.

What, then, is the force of the language employed between the plaintiff and defendant in the one case and Yost and the defendant in the other? In a view which we think most favorable to plaintiff, it appears that defendant was seeking to sell trucks and in pursuance of such purpose, personally and through an agent, offered his wares for sale and told these two men, as prospective purchasers, that he had a contract with Abel Construction Company to furnish ten trucks and if they purchased trucks he would give them employment with Abel Construction Company where they would continue to be employed until freezing weather and that for their work the Abel Construction Company would pay them on a fixed basis which would net them a certain daily income. Stripped of its gloss and forceless verbiage, this is the commitment of the defendant.

The defendant nowhere binds himself to the payment of any compensation to any person or persons whomsoever. He only promises orally to secure and to procure employment with a third party, which employment will provide a certain return in compensation for such employment, on which promises the plaintiff and Yost relied.

The evidence indicates that the parties would not have purchased the trucks in question in the absence of this commitment of the defendant, or, in other words, that this promise was the impelling force or inducement which brought about the execution. and consummation of the contracts of sale of the two trucks.

If, then, the commitments of the defendant were matters of inducement, it therefore is unnecessary for us to

discuss the question of whether the contracts were verbal or written, and likewise a discussion of the parol evidence rules is not in point here, further than to say that the written orders for the trucks in question and acceptance thereof by the defendant were a written contract under the laws of this state.

A lengthy discussion of this subject would serve no useful purpose here. It is sufficient, we think, to say that, when fraudulent promises act as the inducement to the execution of a written contract, the remedy is for fraud, and not upon the oral promise as a contractual obligation. *Schuster v. North American Hotel Co.*, 106 Neb. 679; *Davis v. Ferguson*, 111 Neb. 691. If the plaintiff had any right of action at all, which question we do not determine, it was not for damages for breach of contract for failure to furnish employment.

In the light of the conclusion arrived at, it at once becomes apparent that plaintiff has not sustained the causes of action set forth in his pleadings, and, further, that no suit upon contract or for breach of contract to furnish employment is maintainable, so therefore the decision and judgment of the district court must be reversed and the cause dismissed.

REVERSED AND DISMISSED.