IN RE ESTATE OF ETHEL DAVENPORT.
GEORGIA W. WHITTEN, APPELLANT, v. WILLIAM F. DAVENPORT, ADMINISTRATOR, APPELLEE.

2 N. W. (2d) 17

FILED JANUARY 16, 1942. No. 31192.

*Lloyd E. Peterson* and *D. W. Livingston,* for appellant.

*Frederic C. Kiechel* and *Armstrong & McKnight, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is an appeal from a judgment on a verdict directed by the district court for Nemaha county, Nebraska, in favor

of William F. Davenport, administrator of the estate of Ethel Davenport, deceased, and against Georgia W. Whitten, claimant. This judgment was entered upon a claim originally filed by Whitten against that estate in the county court of Nemaha county for personal services rendered said deceased during her lifetime, which claim is, omitting formal parts, as follows:

"To: Feb. 26, 1937, thru June 25, 1939, for care, board and room for deceased, 120 weeks, and 2 days at $5.00 per day .................................................................................$4,210.00
 of which amount has been paid.......................... 1,800.00

 leaving a balance owing of..........................$2,410.00."

To this claim the administrator filed objections in writing, of which the following constitutes a part:

"Objector admits that the said Ethel Davenport was provided with board, lodging, and care during the period mentioned in said claim to wit, February 26, 1937, to June 22, 1939; but alleges the fact to be that during all of said time the said Ethel Davenport was under guardianship and that this objector was her guardian. That before the services were rendered by the claimant the claimant agreed to render such services for the sum of $15.00 per week, and that thereafter she was paid by said guardian said sum of $15.00 per week during all of said period except the time intervening between May 26 to June 27, 1939, or period of approximately four weeks for which she is entitled to the sum of $60.00." The administrator further alleged in such objections that the oral agreement above set forth had been approved and authorized by the county court before the making thereof.

The answer or reply of the claimant filed in said county court contained the following:

"Alleges the facts to be that at the time she accepted the care of the said deceased, the said deceased was insane and it was represented to claimant that the said deceased was without property or other means with which to pay for the care and attention required to meet her necessities, other

than $15.00 per week. That said services were, as claimant advised the friends and relatives of said deceased who negotiated with claimant, worth $5 00 per day or $35.00 per week, but they protested her inability to pay this amount and under the mistake of fact that deceased was unable to pay more, claimant accepted the employment and rendered said services and never learned that the deceased had means sufficient to pay the regular charge of $5.00 per day or $35.00 per week, until after decedent's death and after the said services had been rendered. That by reason of said mistake of fact this claimant is not bound by any agreement of $15.00 per week, but is entitled to the full amount of $35.00 per week during all of said time. * * *

"That when the said county court ordered the said guardian to pay her only $15.00 per week for said services the court was not informed of the mistake of fact under which said agreement was made, or the true value of said services, and claimant was not in court or a party in court when said order was made and she is not bound thereby and so far as she is concerned said order is void." This answer or reply contained the usual prayer.

These constituted the essential issues as made by the pleadings on which the case was tried.

Thereafter on November 6, 1939, the county court of Nemaha county disallowed the claim of Georgia W. Whitten except for the sum of $60 which was allowed claimant. Thereupon claimant appealed said cause to the district court for Nemaha county, where by agreement of parties the trial was had upon the pleadings filed in the county court, which trial resulted in judgment against claimant as entered in the county court. From this judgment, claimant appeals to this court.

It is an undisputed fact in this case that an oral agreement was made between the claimant and the guardian of Ethel Davenport, an insane person, for her custody and care at an agreed compensation of $15 a week. It also appears that this matter had been submitted to the court appointing the guardian and the contract had been by it

approved. Also, under the terms of this oral contract claimant received Ethel Davenport under her care on the 26th day of February, 1937, and said Ethel Davenport continued in claimant's custody until the death of this insane person on June 25, 1939. Claimant was paid as provided by the contract of employment to the 26th day of May, 1939. She accepted said compensation and receipted therefor so far as disclosed by the evidence, and voiced no protest or objection until after the death of Ethel Davenport.

This oral contract of employment, the claimant now, in effect, denounces as having no binding force and effect. The basis of this action, as stated in her pleadings, is solely that "It was represented to claimant that the said deceased was without property or other means with which to pay for the care and attention required to meet her necessities, other than $15.00 per week. That said services were, as claimant advised the friends and relatives of said deceased who negotiated with claimant, worth $5.00 per day or $35.00 per week, but they protested her inability to pay this amount and under the mistake of fact that deceased was unable to pay more, claimant accepted the employment and rendered said services."

In the consideration of the pleadings, it will be remembered that what is usually understood, as a matter of law, by the term "under a mistake of fact" is confined to cases wherein, because of such mistake, the minds of the parties never met, and there was, therefore, no contract; and also to cases where the contract made was not correctly set out by the words, whether oral or written, by which it was expressed. Under the proof of facts herein, that there was an actual meeting of minds in this transaction is not questioned; and that the exact terms of an oral contract were actually and truly agreed upon between plaintiff and the guardian of the incompetent, and duly approved by the county court of competent jurisdiction, is not denied by the plaintiff. In fact, the basis of claimant's cause of action is not in any manner involved in the oral contract actually made, but exists, if at all, wholly collateral to the same. In this con-

nection it will be remembered that, "A mistake of only one party that forms the basis on which he enters into a transaction does not of itself render the transaction voidable." Restatement, Contracts, sec. 503. And, "It has been held that to be remedial the mistake must relate to a fact which constitutes the very essence of the contract and is material in the sense that it is one of the things contracted about." 17 C. J. S. 497, sec. 144.

It is to be noted that, as a matter of pleading, fraud or fraudulent representations is not charged by the claimant as against the duly appointed guardian. He is not named in claimant's pleading; but claimant relies on the statements of "friends and relatives," whom she does not name, and which statements are not alleged to have been fraudulently made. Unquestionably, "The general rule is that a third person who furnishes support or maintenance to a ward acquires no enforceable claim against the guardian or the ward's estate in the guardian's hands, for payment, compensation, or reimbursement, unless there was an expressed or implied agreement with the guardian therefor." 28 C. J. 1121. If neither an express nor an implied agreement exists, there can be no recovery in the instant case.

It, therefore, appears that there can be no recovery against the decedent's estate if relief granted be restricted to the limitations of claimant's pleading. However, if the failure of proper pleadings on the part of the claimant be waived, and the case be deemed to be submitted here on the theory that the question actually tried and determined by the district court was the issue of fraudulent representations by or on behalf of the guardian, believed and relied upon by claimant, which she claims were made, and which she further claims were binding upon the insane person and enforceable against her estate in the granting of the relief sought, we are again apparently surrounded by insuperable difficulties. To sustain such claim the fact that a relationship substantially identical with or quite similar to that of principal and agent between the makers of the representations relied upon and the ward or the ward's estate must

be established. Certainly the statements of those who occupied the relation of mere strangers would be wholly ineffective to create legal liability against either a general guardian or the estate by him represented. In a case involving a similar contention the supreme court of Utah in *Reams v. Taylor*, 31 Utah, 288, 87 Pac. 1089, in discussing the relation between an insane ward and her guardian, took occasion to state:

"In this case, however, the principle upon which the relation of principal and agent is based, wholly fails. There cannot be an agent unless there is a principal. In order to create the relation there must exist a person who is competent to select and appoint an agent to act for the principal. An agent can and does exercise delegated powers only, and an incompetent person cannot delegate powers arising, either directly or by implication of law. The doctrine of principal and agent, therefore, cannot apply between an insane person and his guardian, at least not where the insane person is sought to be held upon a default of the supposed agent's personal promise or undertaking."

In other words, "A guardian is a trustee and is governed by the same rules that govern other trustees." 25 Am. Jur. 113, sec. 185.

It would seem, therefore, that, if this estate of the ward is to be subjected to liability under the facts in this case, it must be based upon tort. Excluding from present consideration all that may be involved in the peculiar character of a general guardian, the making of an express oral contract to furnish services in suit must be and is admitted. Its essentials are competent parties, a subject-matter, a legal consideration, and mutuality of agreement. In its substance it is clearly an oral contract, of enforceable terms, which has been substantially performed by both of the parties thereto. None of its essentials embraces the question of the then value of the ward's estate, and that subject formed no part of the express agreement as originally made and which was never modified by the mutual assent of the parties thereto. There is no charge that there is

fraud in the factum of the contract or that the same was by the parties not intended to be made as actually orally agreed upon. But claimant, in effect, in her proof attempts to establish that she was induced by alleged collateral fraudulent representations of alleged "friends and relatives" of the incompetent, who negotiated the contract, to execute the very oral contract she intended to enter into. If we further assume (but do not determine) that these representations were material and establish actual fraud, it would amount to what is designated in modern texts as "fraud in the treaty." 17 C. J. S. 504, sec. 153. Such contracts so obtained are not void but voidable only at the election of the injured party, but otherwise enforceable by the parties thereto. It is also axiomatic that "No contract may be implied where an enforceable express contract exists between the parties as to the same subject-matter and a conflict would result." 17 C. J. S. 321, sec. 5.

In other words, "An express contract is the exclusive source of the legal rights and duties between the parties as regards the matters to which that contract pertains." *Benedict v. Pfunder*, 183 Minn. 396, 237 N. W. 2.

Briefly, the claimant in this case, assuming the truth of all possible contentions as to the facts in this transaction, is entitled only to such rights against the estate of this ward as the law vests in her because of this voidable express contract.

But its existence under the circumstances involved in this case precludes a recovery on an implied contract. This conclusion is reinforced by the terms of the representations which claimant relies upon, *i.e.*, that no more than $15 a week would be paid for the services desired. Besides, where the alleged fraudulent inducements relied upon constitute no part of the contract entered into but are merely collateral thereto, we are committed to the view that the remedy, if any, is for the fraud, recoverable in an action for damages. *Crook v. O'Shea*, 126 Neb. 67, 252 N. W. 456. Therefore, there can be no recovery in the instant case against the general guardian upon an implied contract,

but recovery against the makers of fraudulent representations, if such were made, must be in the nature of an action for tort. The controlling principles governing the relation of guardian and ward are as follows:

"A lawfully appointed general guardian or a guardian of the estate has general authority over the property and affairs of his ward and is entitled to represent him in all legal and business transactions. With respect to the property of the infant, the guardian is a trustee, and persons dealing with him are bound to know his powers and duties and the rules by which he is governed. * * * A natural guardian or one who has been appointed guardian of the person only has no general control over his ward's estate and no power to represent him with respect thereto." 28 C. J. 1123.

So also, "The authority of a guardian does not extend to the doing of any act detrimental to the ward. * * * A guardian cannot bind the ward by an admission contrary to the latter's interest; (or) create an estoppel against the ward by his own acts or omissions." 28 C. J. 1125, 1126.

So, even waiving the limitations imposed upon her by the terms of her pleading, claimant's demands substantially founded upon claimed fraudulent representations as to the value of the ward's properties, so made as to be chargeable against her guardian, are in total variance with the well-established theory of legal liability involved in the relation of guardian and ward, or, as otherwise stated, between a trustee and his trust estate.

The general rule, where torts of a trustee to third persons are involved, is not one primarily of resort by the injured party in the absence of equitable considerations (undisclosed in the present record) to the trust estate, but the legal remedy appears to be, "The trustee is subject to personal liability to third persons for torts committed in the course of the administration of the trust to the same extent that he would be liable if he held the property free of trust." Restatement, Trusts, sec. 264.

Obviously, this must be the final conclusion when we consider the actual representations which plaintiff's evidence, viewed without reference to the countervailing proof, tends to establish as having been made. In the light of the circumstances surrounding this case these representations amounted to no more than a statement of motives of those making the offer. The claimant got what she bargained for whether the representations were true or false. Under these conditions it has long been the view of common-law courts that such representations could not be deemed material for any purpose. Thus, in *Vernon v. Keys*, 12 East (Eng.) 632, this matter was considered by the court. In that case plaintiff claimed to have been injured in the sale of his business and stock in trade by misrepresentations of defendant to the effect that he (defendant) was about to enter into partnership with other persons, and these would not consent to give plaintiff a larger price than L 4,500, while in fact these persons would give as much as L 5,200. Lord Ellenborough said the statement amounted only to a false reason for his limited offer; a false representation in a matter merely *gratis dictum* by the bidder, in respect to which the bidder was under no legal obligation or pledge to the seller for the precise accuracy and correctness of his statement, and upon which, therefore, it was the seller's own indiscretion to rely, and for the consequences of which reliance, therefore, he can maintain no action.

It seems that the course of centuries leaves these principles unchanged. *Byrd v. Rautman*, 85 Md. 414, 36 Atl. 1099.

It follows, from a consideration of the entire record in this case, that the judgment of the trial court is correct, and it is

AFFIRMED.

PAINE, J., dissents.