MOFFETT CO. v. CITY OF ROCHESTER et al.

(Circuit Court, N. D. New York. August 18, 1897.)

1. MUNICIPAL CORPORATION—BID MADE BY MISTAKE—RELIEF IN EQUITY.
  A bid for public work can be withdrawn, upon the ground of mistake, although the charter of the city contains a provision that bids cannot be withdrawn or canceled "until the board shall have let the contract for which such bid is made and the same shall have been duly executed."

2. SAME—INJUNCTION.
  A court of equity will enjoin the enforcement of such bid, induced by the mistake of one, although it could not reform such bid unless the mistake had been mutual.

Louis Marshall and Joseph Mullin, for complainant.
William F. Cogswell and A. J. Rodenbeck, for defendants.

COXE, District Judge. The question in this controversy is plain and simple: Shall the complainant be held to an erroneous bid by which it agreed to do certain work for the city of Rochester for $63,-800 less than was intended? The work related to the construction of a conduit to convey the water of Hemlock Lake to the city. By a mistake of Mr. Burlingame, its engineer, the complainant bid 50 cents per cubic yard for earth excavation in open trenches when it intended to bid 70 cents, and $1.50 for earth excavation in tunnel when it intended to bid $15. The proof of these mistakes is clear, explicit, and undisputed. As soon as the item proposing to do the work for 50 cents, as aforesaid, was read at the meeting of the executive board and before any action was taken thereon Mr. Burlingame stated that it was an error and that complainant intended to bid for route B the same as for route A, viz.: 70 cents. There is some testimony of a negative character that this prompt repudiation of the bid did not take place, but the great weight of testimony is in favor of the complainant. Had the errors been corrected the complainant's bid would still have been $200,000 below the next lowest bid. On route A the complainant's bid was $903,324. The mistakes all occurred on route B and yet route A was selected and the work awarded to other bidders for $1,123,920, or $220,596 more than the complainant's proposal.

Upon the principal issue there is no disputed question of fact. Counsel for the defendants, though not admitting the mistakes, which are the basis of the action, do not dispute them. The oral argument proceeded upon the theory that the mistakes were made precisely as alleged. In order that no injustice may be done to the defendants, their position in this regard is stated in the language of their brief as follows:

"We admit that the evidence of the complainant shows that Mr. Burlingame entered in his proposal sheets, certain figures and numbers different from those which he intended to make, and that the defendants have no evidence to contradict his testimony."

The facts being undisputed the question is one of law. It would seem almost a reproach to our jurisprudence if equity shall be compelled to confess itself helpless in such circumstances. To grant the relief asked for does no injury to anyone. To refuse it entails upon the complainant a possible loss of $90,000; a penalty so out of proportion to its fault that its enforcement would seem repugnant to those principles of natural justice which are the foundation of all law. The learned senior counsel for the defendants concedes that were this a dispute between individuals "the one making the proposal can undoubtedly withdraw the same at any time before acceptance by the person to whom such proposal is made." He concludes, however, that the rule is different where competitive proposals are invited for public work. Why this difference the court is unable to perceive. The law is based upon broad, general rules applicable alike to individuals and corporations. A party dealing with a municipal corporation should not be held to the strict letter of his agreement where he would be released if dealing with an individual. But it is argued, though relief might be granted in other circumstances, there can be none here, for the reason that the charter of the city of Rochester provides that "neither the principal nor sureties on any bid or bond shall have the right to withdraw or cancel the same until the board shall have let the contract for which such bid is made, and the same shall have been duly executed." It is thought that this clause is not applicable to the peculiar facts here shown. The complainant is not endeavoring "to withdraw or cancel a bid or bond." The bill proceeds upon the theory that the bid upon which the defendants acted was not the complainant's bid; that the complainant was no more responsible for it than if it had been the result of agraphia or the mistake of a copyist or printer. In other words, that the proposal read at the meeting of the board was one which the complainant never intended to make and that the minds of the parties never met upon a contract based thereon. If the defendants are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth $1,000,000 for $10, he must be held to the strict letter of his contract while equity stands by with folded hands and sees him driven into bankruptcy. The defendants' position admits of no compromise, no exception, no middle ground.

It is argued that the mistakes were not mutual and, therefore, that there is no ground of equitable cognizance. It should be remembered, however, that the complainant does not seek to reform a contract but to be relieved from an unconscionable bid by its rescission or cancellation. Equity cannot reform an agreement unless both parties were mistaken, but it can interfere to prevent the enforcement of an un-

just agreement induced by the mistake of one. This principle is well expressed in 15 Am. & Eng. Enc. Law, p. 647, as follows:

"Equity will not reform a written contract unless the mistake is proved to be the mistake of both parties, but may rescind and cancel a contract upon the ground of a mistake of facts, material to the contract, of one party only."

Prof. Pomeroy says:

"Cancellation is proper when there is an apparently valid written agreement or transaction embodied in writing, while in fact by reason of a mistake of both or one of the parties, either no agreement at all has really been made, since the minds of both parties have failed to meet upon the same matters; or else the agreement or transaction is different, with respect to its subject-matter or terms, from that which was intended." 2 Pom. Eq. Jur. § 870.

See also: Crowe v. Lewin, 95 N. Y. 423; Smith v. Mackin, 4 Lans. 41; Bradford v. Bank, 13 How. 57, 68; Railroad Co. v. Jackson, 24 Conn. 514; Snell v. Insurance Co., 98 U. S. 85.

It is said that the complainant has an adequate remedy at law. This objection does not appeal strongly to the court in a case where all the parties are on the record, where all the facts bearing upon the transaction have been collected with great diligence and expense and where the questions in dispute have been fully and ably debated. In such circumstances the court should not, unless clearly compelled to do so, adopt a course which will render nugatory all this labor and expense. Believing that the complainant is entitled to relief the duty of granting it should not be devolved upon another tribunal in order that a doubtful theory may be vindicated. But is there a legal remedy? How could the complainant in an action on the bond take advantage of its mistakes? If a court of law could not declare the proposal rescinded for mistake it would be compelled to treat the complainant as in default and enforce the bond. The complainant is entitled to a decree rescinding its proposals and enjoining the defendants as prayed for in the bill.