SCHOOL DISTRICT OF SCOTTSBLUFF, A CORPORATION, APPELLANT, V. OLSON CONSTRUCTION COMPANY, ET AL., APPELLEES.

45 N. W. 2d 164

Filed December 20, 1950. No. 32811.

*Mothersead, Wright & Simmons*, for appellant.

*Woods, Aitken & Aitken,* and *Neighbors & Danielson,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action against the Olson Construction Company and its bondsman, Maryland Casualty Company, because of the failure of the former to comply with its bid and to contract for the construction of the buildings for the doing of which the bid was submitted. The trial court held against the plaintiff school district and for the defendants. The plaintiff appeals.

The school district advertised for bids for the construction of a new vocational agriculture and grandstand building and an addition to the Bryant Elementary School. The defendant Olson Construction Company was the successful bidder at $177,153.00. Pursuant to the instructions to bidders, contained in the advertisement for bids, the bid was accompanied by a bid bond in the amount of 5 percent of the bid, the defendant Maryland Casualty Company appearing as the surety thereon. The closing time for the acceptance of bids was fixed as of April 15, 1948, at 8 p. m. The bid of the Olson Construction Company was submitted on the evening of April 15, 1948, prior to 8 p. m. It was accepted and the contract awarded to the Olson Construction Company by the school board of the school district before the adjournment of the board thereafter on that day. The Olson Construction Company refused to comply with its bid and this action was brought to recover from the Olson Construction Company and its bondsman the sum of $8,857.65, the same being 5 percent of the bid, the amount the defendants obligated themselves to pay if the Olson Construction Company failed to enter into a contract to perform the work in accordance with its bid.

The bid of the Olson Construction Company was

$177,153.00 which showed an itemization of $68,410.00 for the construction of the vocational agriculture and grandstand building. The only other bid was in the amount of $203,758.00 and showed an itemization of $89,905.00 on the vocational education and grandstand building. The architect's estimate on the latter building was $89,340.00. The defense of the Olson Construction Company is based on a typographical error in computing the total of its bid, which resulted in a reduction of the intended bid by an amount of $23,600.

The evidence shows that on April 15, 1948, John H. Miller, the vice president and secretary of the Olson Construction Company, was in Scottsbluff for the purpose of preparing the bid in final form for submission to the school district. In preparing the bid, form estimate sheets were used. Each of these form estimate sheets listed different items such as materials, labor, unit price, bids of subcontractors, and similar items. In order to arrive at the bid to be submitted it was necessary to tabulate the various sheets and add them up to secure the total amount of the bid. This latter work was assigned to one Erma Price, an experienced employee of the company. In tabulating the amounts shown on the estimate sheets relating to the bid on the vocational agriculture and grandstand building she inadvertently dropped a figure from the amount for which the structural steel was subcontracted, so that it was listed on the adding machine as $2,689 instead of $26,289. This resulted in a total being entered upon this particular estimate sheet in the amount of $6,624.50 instead of $30,224.50, even though one of the items alone amounted to $26,289. The erroneous total of $6,624.50 was carried into the total bid and resulted in the bid of $177,153.00 instead of $200,753.00 which the bid would have been except for the error. The evidence shows that Mrs. Price checked the items back after the addition was completed and again overlooked the error made in tabulating the amounts on the adding

machine. The evidence shows also that Miller and those engaged with him in preparing the bid were in a hurry because of the approaching deadline for the filing of bids. The delay in preparation is shown to have been the result of slowness on the part of subcontractors in submitting their bids, and delays in calculating certain items due to the rising costs of labor and materials.

The evidence is that the error was not observed by anyone connected with the preparation of the bid. The sealed bid was filed with the school district by a construction superintendent who was not familiar with its contents. Miller left Scottsbluff shortly before 8 p. m. on the last day for the filing of bids. It was not until he learned on the next day of the great variance in the two bids filed that he suspected a mistake in one of them. He immediately requested that the estimate sheets be sent to him at the home office at Lincoln. They were received the following Monday and the error was immediately discovered. The architect for the school district and the school district were immediately informed of the mistake. A number of conferences were had with reference to the matter. The school district decided to insist upon compliance with the bid and upon refusal of the Olson Construction Company to do so this suit was instituted.

The record establishes that the claimed error of $23,600 in the amount of the bid was a clerical mistake in tabulating and computing the bid. It was not an error of judgment in computing the quantity or cost of materials and labor. The mistake was unilateral, there being no allegations or evidence of mutual mistake. The school district contends that under such circumstances a bidder may not be relieved of his bid except where it is shown that the party receiving the bid knew or ought to have known, because of the amount of the bid or otherwise, that the bidder had made a mistake. Restatement, Contracts, § 503; p. 966; Saligman v. United States, 56 F. Supp. 505. While we think it could be said that the

difference in the bids on the vocational agriculture and grandstand building was such as to indicate to the school district that a mistake had been made and thereby bring it within the rules applicable to mutual mistake, the bidder has the right under the facts shown by the record to withdraw its bid even though it was the result of unilateral error.

The rule under such circumstances is: When the mistake is so fundamental in character that the minds of the parties have not, in fact, met, or where an unconscionable advantage has been gained by mere mistake, equity will intervene to prevent intolerable injustice where there has been no failure to exercise reasonable care on the part of the bidder and where no intervening rights have accrued. St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N. W. 500, L. R. A. 1917D 741. In the case before us the mistake was discovered and notice thereof given to the school district within four days after the opening of the sealed bids. It was a fundamental mistake as distinguished from an incidental one. While the bid of the Olson Construction Company had been accepted and the contract awarded to it, no contract had been entered into; it was wholly executory. Failure to use reasonable care on the part of the Olson Construction Company is not shown and rights of third persons had not intervened. The parties could have been placed in status quo at the time of the withdrawal of the bid. The reason for the latter statement is well stated in Kutsche v. Ford, 222 Mich. 442, 192 N. W. 714, wherein it is said: " 'In the instant case it may be thought that the school district cannot be said to be placed in statu quo when it is considered that the building cost nearly six thousand dollars more than plaintiff's bid. To place in statu quo does not mean that one shall profit out of the mistake of another. It does not appear that plaintiff's mistake has made the school building cost more than it otherwise would have cost. The school district, if placed back where it was before the bid, loses nothing

except what it seeks to gain out of plaintiff's mistake. To compel plaintiff to forfeit his deposit, because of his mistake, would permit the school district to lessen the proper cost of the school building at the expense of plaintiff, and that, in equity, is no reason at all for refusing plaintiff relief. * * *.' "

Numerous cases support the granting of relief to a bidder on the ground of unilateral mistake under the circumstances shown to exist in the present case. In Conduit & Foundation Corp. v. City of Atlantic City, 2 N. J. Super. 433, 64 A. 2d 382, the opinion shows that the president and general superintendent of the bidder worked all night preparing estimate sheets from which the bid was computed. In preparing the final bid one page of the estimate sheets was inadvertently omitted from the total, resulting in a failure to include the amount of $50,250, as shown on this estimate sheet. The day after the bids were considered, the president of the bidding company, struck by the lowness of his bid as compared with other bids, investigated and discovered the error. He immediately notified the city and, after conferences with the governing body of the city, withdrew his bid. In granting relief to the bidder in an action to recover the $5,000 deposit which accompanied his bid, the court said: "The facts proven herein further demonstrate that relief by way of rescission could be accomplished without serious prejudice to the defendant, except for the loss of its bargain, and this is not a sufficient ground to deny relief. Barlow v. Jones, *supra.*

"Therefore, it is held that a unilateral mistake existed in the preparation of the plaintiff's bid and that under the facts here present, such bid was promptly rescinded within time.

"It is further held that under the facts here present the plaintiff is entitled to the return of the money deposited with its bid."

In St. Nicholas Church v. Kropp, *supra,* the church committee awarded the contract for a new church

building to the defendant, the low bidder. The next day the defendant notified the church committee that through oversight he had omitted an item for structural iron in the amount of $2,350, and refused to execute a contract at the bid figure. Defendant stopped payment on the check which accompanied the bid. The church sued the defendant for the amount of his check. The court in denying a recovery said: "The question here is whether a mistake of over $2,000 in the bid upon the construction of this church is merely incidental or fundamental. We think the amount is so large that it is unreasonable to suppose that Kropp would have made the bid he did make, if he had known that the structural iron work was not included therein. Here the finding is that it was an honest mistake made without negligence. Plaintiff was apprised of the error at once. No intervening rights accrued. The belated bid which plaintiff accepted was a trifle less than the one Kropp intended to make. There can be no question of not placing plaintiff in statu quo. It did nothing in reliance upon Kropp's bid, and did not change its position in the least between the time it notified him of the acceptance and the time it received notice of his mistake. * * * The bid was, at most, but a step in the making of the contract. It was well understood that before Kropp would be permitted to begin the erection of the building he must execute a formal contract and give adequate bond. The contract was therefore wholly executory. This case upon its facts is not distinguishable from Moffet, Hodgkins & Clark Co. v. Rochester, 178 U. S. 373, 20 Sup. Ct. 957, 44 L. ed. 1108, except that there notice of the error was given when the bids were opened; but that can be of no consequence, since under the statute there applicable the bid could not be withdrawn after being submitted. The court rescinded the accepted proposal to construct certain municipal improvements. This power of a court of equity to rescind or cancel a contract, entered while one party labored under a mistake as to a

fact of impelling importance to him in entering it, is recognized in Brown v. Lamphear, 35 Vt. 252. And in speaking of the case of Diman v. Providence, W. & B. Ry. Co., 5 R. I. 130, the court, in Fehlberg v. Cosine, 16 R. I. 162, 13 Atl. 110, says: 'This case recognizes another rule of equity, that where there has been a material mistake upon one side the court may rescind and cancel the agreement, where it can do so without injustice to the other party. There are two principal classes of cases in which this power of the court is exercised. One includes cases of executory contracts and the like, where the parties can be put in statu quo. In these cases the parties have not, in reality, agreed; their minds have not met; and if one, without fault on his part, has bound himself to something materially different from what he supposed it to be, which can be annulled without loss or injustice to the other side, it is deemed inequitable to enforce it.' See also Smith v. Mackin, 4 Lans. (N. Y.) 41; Board of School Commrs. of City of Indianapolis v. Bender, 36 Ind. App. 164, 72 N. E. 154; Goodrich v. Lathrop, 94 Cal. 56, 29 Pac. 329, 28 Am. St. 91; and Werner v. Rawson, 89 Ga. 619, 15 S. E. 813, where the vendor made a mistake in respect to the purchase price of land and the contract had been executed, still the court rescinded the deal holding: 'While a court of equity will not reform a written contract upon the ground of mistake unless the mistake is shown to be common to both parties, yet it may exercise its powers to grant relief, in a proper case, by rescinding and canceling the writing upon the ground of a mistake of facts material to the contract by one party only.' "

In Kutsche v. Ford, *supra,* the plaintiff's bid was low and the contract was awarded to him. Several days later he discovered that he had omitted from his bid the subcontract of the plasterers in the sum of $6,400 and he immediately notified the architect. He refused to sign the contract and sued to recover back the deposit which accompanied the bid. In sustaining the

claim the court said: "An examination of the author-ities leads to the conclusion that, under the evidence the plaintiff should have relief, and he is granted a decree rescinding and canceling the bid, and contract arising out of its acceptance, and adjudging that the defendant school district pay to him the $3,200, without interest, and that he have process for the enforcement of the same."

Other cases sustaining this principle are: Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U. S. 373, 20 S. Ct. 957, 44 L. Ed. 1108; Board of Regents of Murray Normal School v. Cole, 209 Ky. 761, 273 S. W. 508; Board of School Commissioners v. Bender, 36 Ind. App. 164, 72 N. E. 154; Geremia v. Boyarsky, 107 Conn. 387, 140 A. 749.

The appellant contends that In re Estate of Daven-port, 140 Neb. 769, 2 N. W. 2d 17, and Garsick v. Dehner, 145 Neb. 73, 15 N. W. 2d 235, adopt a different view of the law. Both cases involve questions of mutual mis-take. The question of a unilateral mistake was not be-fore the court. In any event, both cases indicate that relief can be had from the effects of a unilateral mistake where the mistake goes to a fundamental element of the contract. It is elemental, of course, that a contract can-not be reformed upon the basis of a unilateral mistake, although rescission may be had for such a mistake in a proper case. We find no previous decisions of this court which control the result in the case before us.

The essential conditions to relief from a unilateral mistake by rescission are: The mistake must be of so fundamental a nature that it can be said that the minds of the parties never met and that the enforce-ment of the contract as made would be unconscionable. The matter as to which the mistake was made must relate to the material feature of the contract. The mis-take must have occurred notwithstanding the exercise of reasonable care by the party making it. Relief by way of rescission must be without undue prejudice to

the other party, except for the loss of his bargain.

The school district contends that at a meeting of the school board on April 28, 1948, Miller orally ratified the erroneous bid by stating that if the board insisted the Olson Construction Company would construct the buildings for the amount of the erroneous bid. What was actually said by Miller is in dispute. The defendants contend that Miller stated in effect that "if we were liable under this bond that we would perform because I would not forfeit the bond." We think the evidence on this point clearly preponderates in favor of the defendants. It is supported by the affirmative testimony of three members of the school board. The burden of proving a ratification in the present case rests upon the plaintiff. The trial court found against the plaintiff on this issue. The evidence sustains this finding by the trial court.

The judgment of the trial court is supported by the law and the evidence. The judgment is affirmed.

AFFIRMED.