[Civ. No. 23701.   Second Dist., Div. One.   July 7, 1959.]

LARRY GOLDNER, Appellant, v. HARRY JAFFE,
Respondent.

Melvin J. Klarin for Appellant.

Levy, Bernard & Jaffe and F. Filmore Jaffe for Respondent.

LILLIE, J.—Plaintiff, as payee of a promissory note for $5,000 executed by defendant, brought this action for payment. Trial was before the court sitting without a jury. From a judgment in defendant's favor on the ground that there was no consideration for the instrument plaintiff has appealed.

The following summary of the pertinent facts necessarily views the evidence in the light most favorable to the prevailing party. (*Estate of Isenberg,* 63 Cal.App.2d 214, 217 [146 P.2d 424].) In the summer of 1955, defendant asked plaintiff to take over the management of the Chase Hotel, situated in Santa Monica and then principally owned by defendant. The parties had known each other for some 18 years. Com-

pensation was discussed and this and other terms of employment were placed in the hands of their respective attorneys who drafted contracts presumably expressive of their clients' wishes. However, neither document was ever signed. Meantime, pursuant to a verbal understanding, plaintiff entered upon his duties as manager at an initial monthly salary of $750 which was increased a few months later to $1,000 which included room and meals for plaintiff and his wife. As a further inducement for his employment and salary, the unsigned contracts likewise so providing, plaintiff was to receive 25 per cent of the operating profits and 25 per cent of any profit derived from the sale of the hotel if the latter should occur prior to the termination of his employment which, curiously enough, was for no fixed term. Defendant testified that these percentages were in the nature of a bonus for extra services in building up the hotel.

During the early part of May, 1957, the parties had a meeting at the hotel and defendant then advised plaintiff that "the deal (wasn't) working out." Plaintiff said: "Now that you are firing me you can probably sell the property for more money, and besides you said to me that I will get 25 per cent of the profits of the hotel." Defendant replied: "All right. I will give you $1,000 severance pay, and I will give you $5,000 (a sum suggested by plaintiff) if I have to pay you for any profit beyond the time your employment ceases." According to the defendant, plaintiff reasoned that he was entitled to at least $5,000 "for doing the work he did to build (up) the building and for the purpose of releasing me (from) any proceeds from a sale I would handle after he did leave my employment."

Mutual releases, prepared by the parties' attorneys, were then executed. Payment to plaintiff of $1,000 "for services rendered as manager," plus the execution of the note in suit, are recited as consideration therefor. When defendant defaulted on the note, plaintiff brought this action in the usual form; the answer denied delivery, and by way of separate affirmative defenses pleaded total failure of consideration and the exercise of coercion and duress. Though failing to make any finding on this latter claim, the trial court concluded that the note was executed "without any consideration whatsoever."

The sole contention on appeal is the insufficiency of the evidence to support the foregoing finding. For reasons hereinafter stated, we are of the view that it is without merit.

█ The action was tried on the theory, and the court impliedly found, that the respondent's consent to the release, constituting the consideration for the note sued upon, was given under a mistake of fact (Civ. Code, § 1577). To that end, parol evidence was properly received to show the want of consideration affirmatively alleged; such evidence does not result in varying the terms of the written instrument, but amounts to an impeachment of the document's character (*Cooper* v. *Cooper*, 3 Cal.App.2d 154, 159 [39 P.2d 820]; *Richardson* v. *Lamp*, 209 Cal. 668, 670 [290 P. 14]).

█ Furthermore, the unsigned contracts of employment, presumably reflecting the parties' respective thinking, were admitted without objection. An examination of both instruments, as well as the oral testimony adduced at the trial is persuasive of respondent's contention that appellant had no meritorious claim save for services rendered as manager to May 5, 1957, when the releases were executed. As hereinbefore pointed out, the parties' agreement called for a bonus payment to appellant realizable (1) from the hotel's operating profits and (2) from the sale of the property during the term of appellant's employment. Appellant's discharge prior to the sale foreclosed any claim under the latter. With respect to the bonus due to the hotel's operations profits, the evidence is quite conclusive that while appellant was manager the operation lost approximately $58,000. Also, appellant admits full reimbursement by respondent for moneys advanced in refurbishing the premises. In this connection, and tending to negate appellant's claim that much of the operating profits were put back into improvements, it appears that following his departure every room in the hotel was repainted and all the furniture, with the exception of 22 carpets, was given to the Salvation Army and the Volunteers of America. Under such circumstances, there is ample support for the implied finding that appellant did little if anything to "build up the hotel" and thus merit the bonus assertedly reflected by the consideration recited in the release.

█ A more difficult question is presented by appellant's further argument that a case was not made out by respondent to bring him within the protective provisions of section 1577 of the Civil Code. █ Under that section not any and every mistake is remediable (*Reid* v. *Landon*, 166 Cal.App.2d 476 [333 P.2d 432]). As the statute declares, and as here pertinent, the mistake of fact must be one not caused by the neglect of a legal duty on the part of the person making the mistake,

and consisting in an unconscious ignorance or forgetfulness of a past fact material to the controversy. Not without justification appellant points out that respondent had access to, and was counseled by, an attorney of his own selection who assisted in the drafting of the release now sought to be avoided; that no steps were taken to rescind or cancel the instrument; that coercion was alleged but not established; in short, the bargain was struck by competent contracting parties.

It is the general rule, as stated in *Palmquist* v. *Mercer*, 43 Cal.2d 92, 98 [272 P.2d 26], that "when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents." Respondent manifestly paid but little attention to what he was signing, for he testified that he did not recall the crucial provisions of his hiring agreement, as they are reflected by the unsigned contract, until two or three months before the trial. Such carelessness, says appellant, is a complete defense to respondent's claim of excusable mistake.

Although the Supreme Court has observed that in nearly every instance of claimed mistake there is an element of carelessness (*Van Meter* v. *Bent Construction Co.*, 46 Cal.2d 588, 594 [297 P.2d 644]), it has also held that ordinary negligence does not constitute the neglect of a legal duty as that term is used in section 1577 (p. 595).

Furthermore, respondent also testified that he relied on appellant's representation that the latter was entitled to a percentage of the sale profits irrespective of his status as an employee. As previously noted, the agreement of the parties did not so provide, and the mistake was therefore a basic one—"material to the controversy." A party who misrepresents the facts and induces the other party to rely on his statements may not validly assert that the latter's reliance was negligent absent some showing that the other party's conduct, in the light of his intelligence and information, was preposterous or irrational (*Van Meter* v. *Bent Construction Co.*, *supra*, 46 Cal.2d 588, 595). This rule is applicable even where the person making the representations believed them to be true (*Reid* v. *Landon*, *supra*, 166 Cal.App.2d 476) as long as the error does not stem from an original error in judgment (*M. F. Kemper Const. Co.* v. *City of Los Angeles*, 37 Cal.2d 696, 703-704 [235 P.2d 7]). We cannot say that respondent's conduct as a matter of law was "preposterous" or "irrational," or that his original error was one of judgment.

■ Proof of mistake should be clear, convincing and satisfactory—and that means to the trial court (*Ciulla* v. *Telschow*, 152 Cal.App.2d 597, 600 [313 P.2d 188]). We have here a circumstance of admitted intimate friendship bordering on a confidential relationship between the parties. ■ Respondent was an absentee owner who seemingly had so far lost contact with this particular operation that he permitted it to lose $58,000 over a three-year period, and the consideration of $5,000 for this release from appellant's nonexistent claims constituted the closing chapter in an unfortunate venture. Under all the circumstances to enforce payment thereof would be to confirm an injustice, and we conclude that the evidence justified relief from the terms of the agreement (Civ. Code, § 1577) and in turn from any obligation under the promissory note sued upon.

Appellant has cited several cases holding that forbearance to sue is sufficient consideration for a release and that the claim need only be of doubtful validity. Here, however, the thing contracted for was valueless and hence the contract of release became a mere nullity (*Holcomb* v. *Long Beach Investment Co.*, 129 Cal.App. 285, 297 [19 P.2d 31]; *City Street Improvement Co.* v. *Pearson*, 181 Cal. 640, 650-651 [185 P. 962, 20 A.L.R. 1317]).

Likewise untenable is appellant's further claim that a new contract, modifying the terms of the hiring, was created by the release. This was a factual question impliedly rejected by the trial court.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.