KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., A
CORPORATION, APPELLANT, V. CONSUMERS PUBLIC
POWER DISTRICT, A PUBLIC CORPORATION AND POLITICAL
SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

140 N. W. 2d 10

Filed February 4, 1966. No. 36116.

James D. Conway, Elmer J. Jackson, and Frank D. Williams, for appellant.

Wilson, Barlow & Neff, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is an action to construe a contract for the purchase and sale of natural gas or, in the alternative, to rescind it on the ground of unilateral mistake. The district court

found for the defendant, judgment was entered accordingly, and the plaintiff has appealed.

The defendant, Consumers Public Power District, a public corporation of the State of Nebraska, hereinafter referred to as Consumers, entered into an agreement with North Central Gas Company, a Wyoming corporation, covering Consumers' total requirements of natural gas to be used for generation of power in Consumers' generating plant at Scottsbluff, Nebraska. The contract was executed July 28, 1961, effective January 1, 1963, for a term of 8 years. The agreement specifically provided that it should extend to and be binding upon the successors and assigns of the parties. The form of the agreement was for what is generally termed industrial interruptable gas service. The agreement provides in part: "* * * the Gas Company agrees to sell and deliver to Consumers and Consumers agrees to purchase and receive from the Gas Company, natural gas to supply the total gas requirements for boilers of the Consumers equipped with gas burning equipment, and gas engine and/or gas turbine driven electric generating units in the operation of its electric generating plant known as the Bluffs Plant at Scottsbluff, Nebraska, subject to the following terms and conditions * * *."

The limitation on the amount of gas to be supplied is as follows: "The Gas Company hereby agrees to use due diligence in supplying all gas as required hereunder by Consumers and in restoring said gas service in case of any interruption. Consumers shall install and maintain at all times at said Bluffs Plant at Scottsbluff, Nebraska, adequate standby fuel, and maintain said plant in condition to permit the use of standby fuel, and if by reason of peak load or other priority demands of its other customers, the Gas Company is unable to supply the full requirements of Consumers for said plant, the Gas Company shall only be obligated to furnish the amount of gas it has available after meeting peak load or other priority demands of its customers, and upon notice from

the Gas Company that it is unable to supply the entire fuel requirements, Consumers will use standby fuel, for its fuel requirements resulting from such deficiency in gas, during such period as such peak load or priority demand may continue. The notice of the Gas Company's inability to furnish sufficient gas to meet the full fuel requirements shall be given the plant manager or the person in charge of said Bluffs Plant, and may be oral or written, and the Consumers shall reduce its gas consumption as requested by said notice as promptly as possible."

On August 14, 1962, Kansas-Nebraska Natural Gas Company, Inc., a Kansas corporation, the plaintiff in this action, acquired control of the outstanding common stock of North Central, and effective at midnight December 31, 1962, caused North Central to be merged into Kansas-Nebraska.

Between July 28, 1961, and December 31, 1962, the volume of gas produced and available from certain gas sources of North Central was reduced, but some new or additional sources were contracted for or utilized by North Central. At least one of these was contracted for by North Central after Kansas-Nebraska had assumed control of North Central, but before the merger. After the merger, the merged company, the plaintiff here, entered into contracts for new and additional gas sources in Wyoming, and built additional transmission and compression facilities.

The general statutes of Kansas here applicable to the merger between North Central and Kansas-Nebraska provide in part: "The resultant corporation shall be subject to all the restrictions, disabilities and duties of each of the constituent corporations consolidated or merged. All rights of creditors and all liens upon the property of any of the constituent corporations shall be preserved unimpaired. All debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to such corporation as has resulted from the con-

solidation or merger, and may be enforced against it to the same extent as if said debts, liabilities, and duties had been incurred or contracted by it." K.S.A. § 17-3706. The actual merger agreement used virtually identical language except to add the word "obligations" to debts, liabilities, and duties.

In the trial court, it was plaintiff's position that the contract was limited to the specific fields or sources of supply, and the specific existing transmission facilities which North Central owned or had under contract on July 28, 1961; and that this should be translated into a fixed, specific, and limited volume of gas committed to the contract, and that volume reduced by the requirements of firm customers. Plaintiff contended that any reduction in volume available from the specific sources of supply owned or contracted for by North Central on July 28, 1961, reduces the volume of gas available and obligated for delivery under the contract, but that any increase in volume of gas coming from other sources, and any increase in volume available by reason of additions to transmission capacity, do not increase the volume obligated or available to Consumers under the contract. The argument is that the plaintiff can refuse to deliver gas to Consumers whenever peak loads or the priority demands of its customers reach a volume equal to the then reduced volume limitations of original service and transmission, even though plaintiff has gas available from new sources of supply or transmission facilities, and is able to supply the full requirements of Consumers.

In this court, the plaintiff now contends that December 31, 1962, the date of the merger rather than July 28, 1961, is the date for determination of the liabilities under the contract.

Ordinarily this court will dispose of a case on appeal on the theory on which it was presented to the trial court by the parties. See Mills v. Aetna Ins. Co., 168 Neb. 612, 96 N. W. 2d 721. We shall do so here although, as we view the matter, it is immaterial which date may

be selected in an attempt to freeze the rights, duties, and liabilities under the agreement.

The contract says nothing about what sources of supply are involved, nor anything about transmission facilities, nor the volume deliverable at any one time from any source. The agreement limits the seller's liability to delivery of gas to Consumers only to the "amount of gas it has available" and to times when "it is unable to supply" the gas requirements of Consumers because of peak loads or other priority demands of its customers. Under the interruptable gas contract here, changes in source of supply and volume deliverable and the requirements of priority customers are all implicit in the contract. It is apparent that the parties contemplated such changes; and that the contract is clear, unambiguous, and specific. The rights, duties, and obligations under such a contract cannot be reduced or enlarged, nor fixed and determined for the entire period of the contract at the volume of gas available or deliverable on a particular day or from a particular source on that day.

The evidence is quite clear that gas companies generally provide for expansion of sources of supply and facilities from time to time to take care of the requirements of their firm customers as the plaintiff did here, and as North Central did between July 28, 1961, and December 31, 1962. Such expansion of supply and facilities obviously benefit interruptable customers also even though the interruptable customer might not be able to force such expansions. There can be little question that if North Central had voluntarily made the same improvements in transmission facilities and obtained the same new sources of supply as the plaintiff here did, Consumers would have been entitled to enforce the specific terms of the contract. To assume that North Central would have done nothing at all is in fact contrary to the evidence and, in any event, pure speculation. To treat what was actually done by the plaintiff as though it had not been done at all because the plaintiff could not have

been forced to do it by the defendant, and the former company is no longer in existence, misconstrues the effect of the merger statutes as well as the terms of the contract.

We hold that the written agreement of July 28, 1961, is not ambiguous, and is not subject to construction or modification by oral or extrinsic evidence or circumstances. The language of the agreement of July 28, 1961, does not limit the gas service from plaintiff to defendant to that volume which can be delivered from time to time from the sources of gas supply which were owned or under contract to North Central on July 28, 1961, nor on December 31, 1962, nor is it subject to trasmission capacity limitations existing on either date.

Upon merger of North Central into the plaintiff, all debts, liabilities, and duties of North Central under the contract attached to the plaintiff, and may be enforced against it to the same extent as if said debts, liabilities, and duties had been incurred or contracted by it.

With respect to the alternative contention of the plaintiff that it is entitled to rescission in the event its construction of the contract is denied, the evidence is clear that Consumers had no knowledge whatever as to what sources of supply or transmission facilities North Central had; that Consumers entered into other contracts and commitments on the strength of this agreement; and that North Central knew of these proposed contracts and commitments of Consumers before the agreement was executed. The evidence is also that the plaintiff itself had knowledge of the agreement of July 28, 1961, and its terms, prior to the merger.

A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform. Wilson & Co., Inc. v. Fremont Cake & Meal Co., 153 Neb. 160, 43 N. W. 2d 657.

As we stated in Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448: "Equity will decree reformation of a

contract only if the mistake is mutual, or for fraud or inequitable conduct."

Here the evidence establishes that serious prejudice, in addition to the loss of the bargain, would result to the defendant in the event of rescission, and that enforcement of the contract is not unconscionable. Where rescission for unilateral mistake of one party would result in serious prejudice to the other party aside from the loss of the bargain, and where enforcement of the contract is not unconscionable, equitable relief by way of rescission is improper. See School Dist. of Scottsbluff v. Olson Construction Co., 153 Neb. 451, 45 N. W. 2d 164.

For the reasons stated, the judgment of the trial court was correct in all respects and should be and is affirmed.

AFFIRMED.