[Civ. No. 1107. Fifth Dist. May 21, 1970.]

McADOO WHITE et al., Plaintiffs, Cross-defendants and Appellants, v. BERRENDA MESA WATER DISTRICT OF KERN COUNTY, Defendant, Cross-complainant and Respondent.

## COUNSEL

Deissler & Elver and Carl L. Elver for Plaintiffs, Cross-defendants and Appellants.

Vizzard, Baker, Sullivan, McFarland & Long and James Vizzard for Defendant, Cross-complainant and Respondent.

## OPINION

**COAKLEY, J.**—The plaintiffs shall be referred to herein as "White" and "Aetna"; the defendant as "The District."

This is an action for declaratory relief in which White and Aetna seek rescission of a construction contract and the return of a bid bond posted by Aetna on behalf of White, the low bidder. The District filed a cross-complaint for damages. Following a trial to the court, judgment was entered in favor of The District on the complaint and on the cross-complaint, and against White and Aetna. The District's damages were fixed at $42,789. There is no substantial conflict in the testimony or in the documentary evidence. The issue on appeal is the court's interpretation of the evidence and the applicable law.

The controversy arose in this way: The District invited bids on a construction project which was divided into four separate entities for bidding purposes. White was low bidder on one segment of the project, i.e., a regulating reservoir. With his bid, White filed a surety bond by Aetna in the sum of $42,789.

Eight other bids were received for the work on which White was the low bidder. When the bids were opened, they ran from White's low bid of $427,890 to a high bid of $721,851. The bid next lowest to White's was by Einer Brothers et al., for $494,320, or $66,430 above White's bid. The estimate of Boyle Engineering, the consulting engineers for The District, was $512,250, or $84,360 above White's bid. Concerned that he had made an error in his bid, White reviewed it in detail and concluded that he had made a mistake in computing item 13, i.e., the cost of excavating 230,000 cubic yards of material. On discovery of his mistake, and prior to acceptance or rejection of any of the bids by The District, White notified The District, in writing, that because of an error in computation, "We hereby withdraw our bid . . . and request the return of the deposit submitted therewith." On the following day, White appeared before The District's board of directors and requested that he be permitted to withdraw his bid. He explained that a mistake had been made with respect to the amount of hard rock to be excavated. White told The District's board of directors that he had made an "error in judgment" in calculating the amount of hard rock to be removed, and that he had not properly analyzed the job in connection with the rock to be excavated.

At this meeting, Robert Thomas of Boyle Engineering reported that the next lowest bidder was a reponsible bidder, that its bid was in good order, and that said bidder had been contacted and requested to hold its bid for another 10 days. Minutes of the board's meeting disclose that Thomas Maddock, vice-president of Boyle Engineering, informed the board that the White bid was quite low, and that perhaps White had made an error of judgment or an error in the placement of a decimal point.

Counsel for the board advised the board that if White's error was due to a mistake of fact the bid could not be accepted, but if it was due to a mistake of judgment the bid was binding upon White. The board then voted to accept the bid which White had asked permission to withdraw. Shortly thereafter, White advised the board, in writing, that he rescinded his bid. The District, thereupon, awarded the contract to Einer Brothers, the next lowest bidder. This action by White followed.

The facts and circumstances which gave rise to White's mistake and upon which the findings and conclusions are predicated are as follows:

Before preparing his bid, White studied the plans and specifications, visited the site, and made a visual examination of the terrain. While White visited the site, his son, Kelly, called at the office of Boyle Engineering for the purpose of examining a soil report relating to the material to be excavated. There, he examined plates 3 and 4, which were part of the soil report and available for examination by all bidders. Prior to looking

at the soil report, he had also examined sheet 10, which was part of the plans and specifications. Plates 3 and 4 show the location of various test holes drilled by the soil engineers. One such hole is marked B-51. Plate 3 also shows a broken line terminating about 100 feet east of point B-51. The broken line represents a proposed penstock alignment, which was not part of the work included in the regulating reservoir phase of the total project. Plate 4 shows "decomposed shale and sandstone" as comprising all but a small portion of the terrain lying west of B-51. Kelly White testified that, on the basis of his examination of plates 3 and 4, he concluded and reported to his father that only a small quantity of hard rock was involved in the work of excavating. His estimate of hard rock was 7 percent. White then called Boyle Engineering, and Mr. Thomas of that firm told him that very little hard rock would be encountered. Thereupon, White submitted his bid and surety bond. It is a fact that decomposed shale and sandstone comprised 90 percent or more of the terrain west of point B-51, with hard rock comprising the balance of the terrain. Thus, Kelly White's estimate of only 7 percent hard rock was reasonably close for the area west of point B-51.

However, sheet 10 and the plans and specifications, as distinguished from plates 3 and 4 of the soil report, clearly show the penstock alignment terminating at a point 400 feet or more east of point B-51, and not 100 feet as indicated in plate 3. A hill, composed almost exclusively of hard rock, lay between point B-51 and the western terminus of the penstock alignment. Excavation of this hill and the hard rock material was part of item 13 of the bid and, therefore, the responsibility of the excavating contractor.

With reference to the entire area to be excavated as called for by item 13, i.e., 230,000 cubic yards of material, the evidence established that, instead of 10,000 cubic yards of hard rock to be removed, there was 110,000 cubic yards; instead of hard rock constituting only 7 percent of the total exacavation, as Kelly White had estimated, it constituted approximately 50 percent thereof, with the remaining 50 percent being made up of decomposed shale and sandstone. It was established that hard rock is substantially more costly to excavate than decomposed shale and sandstone.

White had a copy of the specifications which he examined before preparing his bid. Section 108 thereof provided that The District did not warrant the accuracy of the soil report. White was an experienced contractor. As such, he knew that soil reports are prepared in advance of the detailed specifications for a project, and that the specifications, not the soil report, control. There was, therefore, an element of negligence in

the preparation of White's bid, more particularly, in White's failure to correlate plates 3 and 4 of the soil report, which White knew from experience were not warranted as accurate, with sheet 10 and the other specifications.

The findings recite only that White made a mistake in estimating the amount of hard rock material to be excavated; that the mistake was material to the contract; and that the mistake was one of judgment.

The conclusions recite that White made a valid contract with The District "and is not excused therefrom by any mistake of fact, caused either by excusable neglect on his part, or by misrepresentations on the part of said defendant water district," and that White and Aetna are jointly and severally liable to The District.

While the "finding" that White made a mistake of judgment is a conclusion of law[1] (and was so designated in the court's memorandum of decision) rather than a finding of fact, it is apparent from an examination of the court's memorandum of decision,[2] the findings and conclusions, and other parts of the record that the court concluded as a matter of law (1) that· White had made a mistake of judgment, as distinguished from fact, (2) that his mistake constituted the neglect of a legal duty, and (3) that under the law of this state rescission will be granted if the mistake was one of fact but not if it was one of judgment.

White's position is that his mistake was one of fact, not judgment, and that it did not result from any neglect of a legal duty. It is The District's position that the court rejected White's contention that he was misled by plates 3 and 4 of the soil report and by Mr. Thomas' statement that there was very little hard rock to be removed, and that the court concluded that White had simply misjudged the amount of hard rock to be removed and prepared his bid accordingly. With this as a predicate, The District argues that the findings are supported by substantial evidence, and, therefor, under the substantial evidence rule, the judgment must be affirmed. While this is a correct statement of the substantial evidence rule (*Estate of Jamison,* 41 Cal.2d 1, 13 [256 P.2d 984]), we do not believe that it meets the real issue in this case.

We first point out that there was no finding that White was negligent, and no finding as to whether White was or was not inadvertently misled

---

[1]See *Moffett, Hodgkins, & Clarke Co.* v. *Rochester,* 178 U.S. 373 [44 L.Ed. 1108, 20 S.Ct. 957], where a similar finding was held to be a conclusion of law.

[2]An appellate court may examine the trial court's opinion for assistance in interpreting the findings where clarification is indicated. (*McBain* v. *Santa Clara Sav. & Loan Assn.,* 241 Cal.App.2d 829 [51 Cal.Rptr. 78].)

by plates 3 and 4 of the soil report and by Mr. Thomas' statement that there was very little hard rock to be removed. What the court said on those aspects of the case (in its decision only) was that there was no misrepresentation by The District on which White relied, and that White was guilty of "neglect of legal duty," i.e., negligent in preparing his bid. We concur that because the specifications controlled, and expressly stated that the soil report was not warranted, there was no misrepresentation by The District, and that White was negligent in failing to correlate the soil report with the plans and specifications which correctly disclosed the eastern terminus of the excavation. However, there was no contradiction and no impeachment of White's testimony as to the reasons why he "misjudged" the amount of hard rock to be removed. Nor was there any finding, and we find no evidence, that White's reliance on plates 3 and 4 and on Mr. Thomas' statement was not in good faith, albeit he was negligent.

▮ Where, as here, the facts are not in dispute, the issue is one of law, and this court is free to draw its own conclusions of law from such undisputed facts. (*Moffett Co.* v. *City of Rochester,* 82 F. 255, 256; *San Diego Trust & Sav. Bank* v. *County of San Diego,* 16 Cal.2d 142, 153 [105 P.2d 94, 133 A.L.R. 416].) ▮ Doing so, we conclude that White's mistake was a mixed mistake of fact and of judgment. White's estimate or calculation of the amount of hard rock to be excavated was judgmental, and in that sense his mistake was one of judgment. On the other hand, his estimate or calculation was predicated on a misunderstanding of the true facts, occasioned in part, at least, by reliance on the soil report (plates 3 and 4) and Mr. Thomas' statement. It is in this posture that we now examine the law on the subject.

### THE LAW

We commence our discussion of the law by pointing out that counsel has not cited any case, from California or elsewhere, and our independent research has failed to find such a case, where the mistake, whether of fact or of judgment, so called, was occasioned by circumstances similar to those present in this case.

▮ *M. F. Kemper Constr. Co.* v. *City of Los Angeles,* 37 Cal.2d 696 [235 P.2d 7], is a leading case on the subject of rescission of bids on a public project. It enumerates the elements essential to rescission for a mistake of fact. They are summarized in headnote 4 of the official report in these words: "Rescission may be had for mistake of fact if the mistake is material to the contract and is not the result of neglect of a legal duty, if enforcement of the contract as made would be unconscionable, if the other party can be placed in statu quo, if the party seeking relief gives prompt notice of his election to rescind, and if he restores or offers to restore to

the other party everything of value which he has received under the contract. (Civ. Code, §§ 1577, 1689, 1691, 3406, 3407.)"

The District's brief acknowledges that all of the elements required for rescission as set forth in *Kemper* are present in our case, except that the mistake was one of judgment, not fact, and the mistake resulted from the neglect of a legal duty. We have held, *supra*, that White's mistake was not solely one of judgment, but was a mixed mistake of fact and of judgment. We shall return to that subject after we first examine the meaning of the term "neglect of a legal duty." (*M. F. Kemper Constr. Co.* v. *City of Los Angeles, supra.*)

That term appears in Civil Code section 1577, which reads in part as follows: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: . . ." In construing Civil Code section 1577, the court said in *Kemper, supra,* 37 Cal.2d 696, 702, that: "It has been recognized numerous times that not all carelessness constitutes a 'neglect of legal duty' within the meaning of the section." And in *Van Meter* v. *Bent Constr. Co.,* 46 Cal.2d 588, 594-595 [297 P.2d 644], the court, with reference to the terms "neglect of a legal duty" and "gross negligence," with which the former term is sometimes equated,[3] said: "Some cases have said that a plaintiff will not be denied rescission or reformation because of lack of care unless his conduct amounts to gross negligence or the neglect of a legal duty. [Citations.] These terms are perhaps unfortunate and have caused some confusion. The theory that there are degrees of negligence has been generally criticized by legal writers, but a distinction has been made in this state between ordinary and gross negligence. [Citation.] Gross negligence has been said to mean the want of even scant care or an extreme departure from the ordinary standard of conduct. [Citations.] A breach of legal duty may, of course, consist of either ordinary negligence or gross negligence (Harper on Torts (1933), p. 170), but it has been held that ordinary negligence does not constitute the neglect of a legal duty as that term is used in section 1577 of the Civil Code [citations]."

The soil report on which White relied in part, while not warranted as accurate, was a report used by The District's engineers in preparing the specifications; it was available for study by all prospective bidders; Kelly White examined it, and, in a mistaken reliance on plates 3 and 4 of the report, informed his father that hard rock constituted 7 percent of the excavation. *After* receiving this information from his son, White spoke with Mr. Thomas of Boyle Engineering and was told by him that very

---

[3]See annotation 52 A.L.R.2d 792, 794, footnote 4.

little hard rock would be encountered. The undisputed fact is that almost 50 percent of this material to be excavated was hard rock. We hold, therefore, that White's negligence was ordinary and not gross; that his error "is one which will sometimes occur in the conduct of reasonable and cautious businessmen," and did not constitute neglect of a legal duty. (*M. F. Kemper Constr. Co.* v. *City of Los Angeles, supra,* 37 Cal.2d 696, 702; see also *Elsinore Union etc. School Dist.* v. *Kastorff,* 54 Cal.2d 380, 388 [6 Cal.Rptr. 1, 353 P.2d 713]; *Goldner* v. *Jaffe,* 171 Cal.App.2d 751 [341 P.2d 354]; *Reid* v. *Landon,* 166 Cal.App.2d 476, 482 [333 P.2d 432].)

■ We next consider the meaning of mistake of fact "versus" mistake of judgment. Where the mistake in preparing a bid is due to clerical error, e.g., in mathematical computation or in the transposition of figures from work sheets to final bid forms, and where all the other elements calling for rescission are present, the cases uniformly hold the mistake to be one of fact and release the bidder from any obligation under his bid.[4]

Statements appear in some of the cases to the effect that courts of equity will grant relief where the mistake is one of fact, but not where the mistake is one of judgment.[5] Such a statement appears in *Kemper, supra,* where it is said at page 703: "There is a difference between mere mechanical or clerical errors made in tabulating or transcribing figures and errors of judgment, as, for example, underestimating the cost of labor or materials. The distinction between the two types of error is recognized in the cases allowing rescission and in the procedures provided by the state and federal governments for relieving contractors from mistakes in bids on public work. (See *School Dist. of Scottsbluff* v. *Olson Constr. Co.,* 153 Neb. 451 [45 N.W.2d 164, 166]; Gov. Code, § 14352; Federal Armed Services Procurement Regulation, 32 C.F.R. 401; Decisions B-91381, 29 Comp.Gen. 393.) *Generally,* relief is refused for error in judgment and allowed only for clerical or mathematical mistakes. (See cases cited in 59 A.L.R. 827-830 and 80 A.L.R. 586.) Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making." (Italics added.)

We first observe that in *Kemper* the Supreme Court said, *"Generally,* relief is refused for error in judgment." (Italics added.) It was careful not

---

[4](Cf. *M. F. Kemper Constr. Co.* v. *City of Los Angeles, supra,* 37 Cal.2d 696; *Elsinore Union etc. School Dist.* v. *Kastorff, supra,* 54 Cal.2d 380.)

[5](Cf. *M. F. Kemper Constr. Co.* v. *City of Los Angeles, supra,* 37 Cal.2d 696; *Reid* v. *Landon, supra,* 166 Cal.App.2d 476, 482.)

to lay down a hard and fast rule to the effect that relief may never be granted for a mistake in judgment.

We have examined *School Dist. of Scottsbluff* v. *Olson Constr. Co.,* 153 Neb. 451 [45 N.W.2d 164], and the A.L.R. references on which the court relied in *Kemper.* Neither the school district case nor any of the cases cited in the A.L.R. annotations involved a mistake of judgment, so called, as distinguished from a mistake of fact. *School Dist. of Scottsbluff* v. *Olson Constr. Co., supra,* involved the typical case of clerical error in transposing figures from work sheets to final bid forms. The trial court approved withdrawal of the bid, and the Nebraska Supreme Court affirmed. This statement appears in the opinion of that court: "It was not an error of judgment in computing the quantity or cost of materials and labor." (45 N.W.2d 164, 166.) The statement is unsupported by case citation and is not germane to the facts before the court. None of the cases cited in the two A.L.R. references quoted in *Kemper, supra,* denied relief to the bidder upon the grounds of a mistake of judgment.

In *Connecticut* v. *F. H. McGraw & Co.,* 41 F.Supp. 369, the low bidder on a bridge substructure misinterpreted the specifications and bid accordingly. His bid of $339,980 was approximately $70,000 below the next lowest bidder and more than $60,000 below the state's estimate. When the bids were opened, both the state and McGraw realized at once, from the wide discrepancy between the state's estimate and McGraw's bid, that an error had been made. They conferred and determined that McGraw interpreted the specification as permitting the work to be done by a less costly method than the one called for by the specifications, and on which the state engineers stood firm. McGraw sought permisson to withdraw his bid. Permission was withheld and the contract was awarded to McGraw. He rejected it. The contract was then awarded to the next lowest bidder, and the state sued McGraw and Aetna Casualty & Surety Company on McGraw's bond.

The court granted judgment for McGraw and Aetna. We quote from the court's statement as to the nature of McGraw's mistake: "His mistake therefore comes to this, that he thought he had a plan which was so within the specifications as readily to secure the approval of the engineer. And on the evidence I am constrained to hold that this was by no means an unreasonable assumption on his part. That his mistake was bona fide is the purport of all the evidence pertaining to the surrounding circumstances. Furthermore, he would hardly have taken the risk of so large a loss or have passed on so big a bonanza to the State had he not been in earnest. And, as we have seen, this mistake was thoroughly known to the state officials before they accepted the bid." (41 F.Supp. 369, 373.)

The court did not discuss the case in terms of "mistake of fact" versus "mistake of judgment." It did, however, cite and discuss other Connecticut cases in which the low bidder's error was arithmetical, i.e., the classical mistake of fact situation in which rescission is uniformly granted where all of the other elements of rescission are present. It declined to draw a distinction between that kind of error and an error due to a misreading of the specifications, holding that: ". . . in the Geremia and Rochester cases the error was arithmetical, whereas here it is based on an incorrect reading of specifications in the light of the state engineer's requirements. The distinction seems artificial. In either event the bidder errs; in either event he is to a degree negligent. But in both, the offeree is aware of the error, and presses his advantage unfairly if he insists on the work at an inadequate price." (41 F.Supp. 369, 374.) The court was of the opinion that: ". . . the general result in this country is in accord [with its decision], at least where the mistake is 'palpable' to the offeree." (41 F.Supp. 369, 374.)

The general rule where the mistake is one of fact, so called, is set forth in an annotation in 52 A.L.R.2d 792, at page 795: "Although a bidder for a public contract makes a unilateral mistake in the preparation of his bid, if it is remediable (that is, material and palpable so that performance would work a hardship upon him, relates to the substance of the consideration, is the result of inadvertence, as distinguished from gross negligence amounting to a breach of duty to those who could be affected by his calculation), and under the circumstances no hardship would result to the offeree by reason of a change of position, notification to the offeree previously to acceptance, or after acceptance if a contemplated contract has not been executed, makes equitable relief available on the ground of mistake the same as though the mistake had been a mutual one originally and the remedy sought was reformation. In other words, timely communication of knowledge of a remediable mistake to the offeree eliminates the obstacles to relief traditionally associated with unilateral mistake." In the summary to that annotation we find this language at page 796: "In the typical situation here presented, so firmly has the rule favoring equitable relief against unilateral mistake become established that *no case has been discovered in which it has not been granted,* by way of rescission or similar or appropriate relief, where there is proof of a combination of circumstances establishing remediable mistake and timely communication of knowledge to and assertion of the right to relief against the other party." (Italics added.)

The following observation is made in footnote 9 on page 802 of the above annotation: "Where an offeree, by reason of something in a bid, particularly concerning the amount, knows or has reason to know that

a mistake has probably been made, he is not justified in accepting the offer in an attempt to create a binding contract." Additionally, "Knowledge by one party that the other is under a mistake as to such a matter as would make the transaction voidable if the mistake were mutual, if accompanied by any circumstances deemed inequitable, and perhaps generally without more, will have the same effect as mutual mistake in justifying rescission." (5 Williston on Contracts (1937) § 1557, p. 4362.)

In *Kemper, supra,* the contractor brought an action against the city to cancel a bid it had submitted on public construction work and to obtain discharge of its bid bond. The city cross-complained for forfeiture of the bond and damages. The trial court canceled the bid, discharged the bond, and allowed the city nothing on its cross-complaint. In affirming, the Supreme Court said: "The sole issue is whether the company is entitled to relief on the ground of unilateral mistake." (P. 699.) The unilateral mistake found by the court in *Kemper* was the typical mistake of fact, i.e., an error in the transposition of figures, arrived at by the contractor's estimators, to a final accumulation sheet from which the total amount of the bid was taken. An item of over $300,000 was inadvertently omitted in transposition from the work sheet to the accumulation sheet, and, accordingly, omitted from the final bid. From that point on that case and our case are identical. Thus, there, as here, (1) the contractor was the low bidder; (2) it discovered its mistake shortly after the bids were opened; (3) it immediately explained its mistake to the city's board of public works, and withdrew its bid; (4) a few days later, the bidder again appeared before the board and submitted evidence of its mistake; (5) notwithstanding, the board thereafter passed a resolution accepting the bid; (6) the company refused to enter into a contract at its bid figure; (7) without readvertising, the board awarded the contract to the next lowest bidder; (8) the city then demanded forfeiture of the bond; (9) the company's suit followed to cancel its bid and to discharge the bond.

The court affirmed the judgment canceling the contract and discharging the bond, holding at page 701 that: "Relief from mistaken bids is consistently allowed where one party knows or has reason to know of the other's error and the requirements for rescission are fulfilled." (Numerous citations from other jurisdictions.)

The sole distinction between the *Kemper* case and our case is in the nature of the mistake made by the bidder. There the error was in transposing figures and the inadvertent omission of a substantial amount from an accumulation sheet and bid, the classic "mistake of fact." In our case, White's error was his negligence in failing to properly correlate plates 3

and 4 with the plans and specifications, and as a consequence he underestimated or miscalculated the amount of hard rock to be removed.

*Moffett, Hodgkins, & Clarke Co.* v. *Rochester, supra,* 178 U.S. 373 [44 L.Ed. 1108, 20 S.Ct. 957], a leading case, involved a bid for excavation and other work on a project for the City of Rochester. The city accepted one portion of the plaintiff's bid, doing so over his timely protest that he had made a clerical error in the computation of his bid for earth and tunnel excavation. The errors were substantial, and he called them to the city's attention while the clerk of the board was reading his bid aloud. He immediately protested the acceptance of his bid and repeated his protest again before the bid was accepted. The city, nevertheless, accepted his low bid for that portion of the work on which the plaintiff was the low bidder. When the city threatened to forfeit the plaintiff's bond of $90,000 if plaintiff did not execute the contract for the work awarded it by the city, the plaintiff brought an action in equity to reform its proposal, or, in the alternative, to enjoin the city from declaring a default and forfeiture of its bond. The trial court held the error to be a clerical error amounting to $63,800 less than the plaintiff intended to bid. It granted plaintiff relief as prayed. The Circuit Court of Appeals reversed, but the Supreme Court reinstated the judgment of the trial court, holding that: "We do not think the negligence was sufficient to preclude a claim for relief if the mistakes justified it.

". . . . . . . . . . .

"There was no doubt of the mistake, and there was a prompt declaration of it as soon as it was discovered and before the city had done anything to alter its condition. Indeed, according to the testimony of one witness, the clerk of the board before the mistake was declared by complainant's engineer expressed the thought that 50 cents per cubic yard for earth excavation was too low, 'and there was some discussion about it at the time, but Mr. Aldridge (he was chairman of the board) said he (the clerk) might as well go on and read it, as the bid was informal.' The reading proceeded, and subsequently the board let the work on contract No. 1 to Jones & Son, and accepted complainant's proposals containing the mistakes for the work on line B, contract No. 2, although complainant protested that there was a mistake in the price of earth excavation and also in tunnel excavation. This was inequitable, even though it was impelled by what was supposed to be the commands of the charter. It offered or forced complainant the alternative of taking the contract at an unremunerative price, or the payment of $90,000 as liquidated damages. We do not think such course was the command of the statute or the board's duty." (20 S.Ct. 957, 961 [178 U.S. 373, 384, 385, 44 L.Ed. 1108, 1114].)

The Supreme Court then adopted this language from the decision of the trial court: " 'If the defendants are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth $1,000,000 for $10, he must be held to the strict letter of the contract, while equity stands by with folded hands and sees him driven into bankruptcy. The defendants' position admits of no compromise, no exception, no middle ground.' [82 Fed.Rep. 256.]" (20 S.Ct. 957, 961 [178 U.S. 373, 386, 44 L.Ed. 1108, 1115].)

This language appears in the trial court's opinion in *Moffett Co.* v. *City of Rochester, supra,* 82 F. 255, at page 256: "The facts being undisputed the question is one of law. It would seem almost a reproach to our jurisprudence if equity shall be compelled to confess itself helpless in such circumstances. To grant the relief asked for does no injury to anyone. To refuse it entails upon the complainant a possible loss of $90,000; a penalty so out of proportion to its fault that its enforcement would seem repugnant to those principles of natural justice which are the foundation of all law."

And in *Elsinore Union etc. School Dist.* v. *Kastorff, supra,* 54 Cal.2d 380, in which our Supreme Court reversed the judgment of the trial court, which had denied relief to a low bidder who had inadvertently omitted a figure for plumbing subcontracting in the amount of $6,500, the court said at page 389: "Under the circumstances the 'bargain' for which the board presses (which action we, of course, assume to be impelled by advice of counsel and a strict concept of official duty) appears too sharp for law and equity to sustain."

The language just quoted from *Moffett, supra,*[6] and *Elsinore, supra,* is particularly applicable in this case. In our opinion, the judgment below draws too fine a line between so-called mistakes of fact and mistakes of judgment, producing a result which finds no support in equity.

To deny White and Aetna the relief they seek would be grossly unjust and would set a harsh and unnecessary precedent. In our opinion, the fact that White said he made a mistake of judgment and that the court "took him at his word," should not change the result. It is the facts surrounding the mistake, not the label, i.e., "mistake of fact" or "mistake of judgment," which should control.

In holding that White is entitled to withdraw his bid and to a return of

---

[6]This is the judgment and opinion which the Supreme Court reinstated and approved in 20 S.Ct. 957 [178 U.S. 373, 44 L.Ed. 1108].

the bond, we are not unmindful that the system of public bidding, developed by experience and usual in public contracts, should not be broken down by lightly permitting bidders to withdraw because of a change of mind. Such a course would be unfair to other straightforward bidders, as well as disruptive of public business. But we are confident that our public agencies and our courts are capable of preventing, and will prevent, abuses where, unlike our case, the facts do not justify relieving the low bidder from his bid. (See *Connecticut* v. *F. H. McGraw & Co., supra,* 41 F.Supp. 369, 374.)

The judgment is reversed, and the court below is directed to enter judgment permitting White to withdraw his bid and to return to White and Aetna the bid bond posted by them.

Stone, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied June 16, 1970, and respondent's petition for a hearing by the Supreme Court was denied July 16, 1970.