131 Ill. App.2d 238 (1971)
266 N.E.2d 778
THE PEOPLE ex rel. THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Plaintiff-Appellant,
v.
SOUTH EAST NATIONAL BANK OF CHICAGO et al., Defendants-Appellees,  (KELLEHER ENGINEERING COMPANY, Counter-Plaintiff-Appellee,
v.
THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Counter-Defendant-Appellant.)
No. 53843.
Illinois Appellate Court  First District.
January 7, 1971.
*239 William J. Scott, Attorney General, of Chicago, (Francis T. Crowe, Assistant Attorney General, of counsel,) for appellant.
Gilmartin & Wisner, of Chicago, (Richard S. Wisner, of counsel,) for appellee.
Judgment affirmed.
Mr. JUSTICE DEMPSEY delivered the opinion of the court:
In response to a notice published by the Illinois Department of Public Works inviting bids for a public construction contract, Kelleher Engineering Company submitted a sealed bid and, as a security deposit to insure its performance, a $7,500.00 certified check drawn on the South East National Bank of Chicago. After the bids were opened, Kelleher, the low bidder, attempted to withdraw. Thet department ignored the request and awarded Kelleher the contract. The company declined the contract and the department kept its check as a forfeiture. At Kelleher's request the South East Bank refused to honor the check and the department brought this action against the bank. Kelleher intervened, filed a counterclaim for equitable relief and a motion for summary judgment. The department also moved for summary judgment. The trial court granted Kelleher's motion, dismissed the department's and ordered the check returned to Kelleher. The department seeks to reverse the judgment.
According to the complaint, countercomplaint, motions for summary judgment and affidavits, the department published, in October 1963, a bulletin announcing that sealed bids for heating and refrigeration work at Tinley Park State Hospital would be accepted up to 2:00 P.M., January 7, 1964. A proposal form furnished to Kelleher provided:
"All proposals shall be accompanied by a certified check, cashiers check or bank draft * * * in the amount as set forth in the official Advertisement and Bid Bulletin. * * * The bidders agrees [sic] that the proceeds of the check or draft shall become the property of the State of Illinois, if for any reason the bidder, within sixty (60) days after official opening of bids, withdraws his bid or if on notification of award refuses or is unable to execute tendered contract * * *."
Kelleher prepared to bid on the work and requested quotations from various subcontractors and suppliers. Some final quotations arrived on January 7th and computations were made at that time by the company's chief estimator, assisted by a secretary. Approximately seventy items were entered on the estimator's sheet and added within a half-hour's time. The company submitted its bid of $222,510.00 along with the security deposit just before the 2:00 P.M. deadline. The bids were opened the same afternoon. A supplier of Kelleher who was present telephoned the company that it had submitted the lowest bid  $25,490.00 below the *240 next lowest bidder. He suggested that the bid be rechecked for possible error. When Kelleher's staff went over the company's proposal on the morning of January 8th they discovered that in preparing the bid, the secretary had tabulated on the adding machine the figure of $2,617.00 instead of $26,170.00  the correct cost of a refrigeration unit. This resulted in a bid lower than intended by $23,553.00. Kelleher notified the department by telephone on January 8th, and by letter the same day, that the company had made a major error in the adding machine tabulation resulting in a bid below cost and that it wished to withdraw its bid. The department did not respond to the request, but on February 25th awarded Kelleher the contract. After Kelleher declined the contract the department awarded it to the next lowest bidder at $248,000.00.
 1 By bidding on the construction project Kelleher made a binding commitment. Its bid was in the nature of an option to the State based upon valuable consideration: the assurance that the award would be made to the lowest bidder. (Cf. Conduit & Foundation Corporation v. Atlantic City (1949), 2 N.J. Super, 433, 64 A.2d 382.) The option was both an offer to do the work and a unilateral agreement to enter into a contract to do so. When the offer was accepted a bilateral contract arose which was mutually binding on Kelleher and the State. (Williston on Contracts (3 ed. Jaeger, 1968), Vol. II, sec. 1441.) Kelleher breached the contract and became subject to the condition incorporated in the proposal form furnished by the department. Under this condition the company's security check was forfeited when it refused to execute the contract tendered by the department.
The issue, simply stated, is whether Kelleher can obtain rescission of its contract because of its unilateral mistake. Kelleher contends that it was not negligent; that its error was merely mathematical; that it acted promptly before any material change occurred in the State's position, and that to permit the department to keep the security deposit under these circumstances would be unjust.
The rule is often stated that relief will not be granted if but one party to a contract has made a mistake. (See, e.g. Restatement of the Law of Contracts, sec. 503; Restatement of the Law of Restitution, sec. 12.) Professor Williston argues in his treatise on contracts that affirmative relief for a unilateral mistake is justified only where the mistake was known to the other party to the transaction or where the person against whom relief is sought is in the position of a donee or volunteer. (Williston on Contracts (Rev. ed. 1937), Vol. V., secs. 1573, 1579.) However, in numerous cases relief has been granted under less rigorous conditions (Annot. 59 A.L.R. 809; Corbin on Contracts, Vol. 3, secs. 608, 609) and the professor himself concedes that rescission should be allowed where *241 a bid was predicated on erroneous arithmetical processes and the party not in error knew or should have known of the mistake. Williston on Contracts, Rev. ed., Vol. 5, sec. 1578.
 2 The conditions generally required for rescission are that the mistake relate to a material feature of the contract; that it occurred notwithstanding the exercise of reasonable care; that it is of such grave consequence that enforcement of the contract would be unconscionable, and that the other party can be placed in statu quo. (Pomeroy's Equity Jurisprudence, Vol. 3 (5th ed. Symons 1941), sec. 870a; annot. 52 A.L.R. 2d 792; 59 A.L.R. 809.) Evidence of these conditions must be clear and positive. Winkelman v. Erwin (1929), 333 Ill. 636, 165 N.E. 205.
Three of these four conditions are unquestionably satisfied: Kelleher's error was material. It made a mistake of approximately 10% on its intended bid. The consequences of the error were grave. The company stood to lose $20,000.00 if it performed at the price quoted in its erroneous bid; it will forfeit $7,500.00 if the contract is enforced. Either loss would constitute substantial hardship. The department was not seriously prejudiced by the withdrawal of the bid. When the mistake was discovered the day after the bids were opened, Kelleher promptly notified the department and announced its intention to withdraw. An award had not yet been made. The department suffered no change of position up to that time. It had ample opportunity to verify Kelleher's claim of error; it knew of the mistake 54 days before it accepted the bid. The department was able, with no great loss (other than the windfall resulting from the erroneous item in the bid) to award the contract to the next lowest bidder.
The pivotal question is the degree of Kelleher's negligence: whether the error occurred despite the use of reasonable care or whether it arose out of such negligence as will bar recovery. Illinois cases involving bidding errors show no clear line of distinction. In Crilly v. Board of Education (1894), 54 Ill. App. 371 the court denied relief to a contractor who claimed he made a mistake in his bid. In Robinson v. Board of Education (1901), 98 Ill. App. 100 a clerical error was made in bidding. The court denied relief on the ground that the contract called for forfeiture in the event of withdrawal by the contractor. The court did not discuss the principles applicable to mistake, nor is it clear whether they were raised by the parties. In Steinmeyer v. Schroeppel (1907), 226 Ill. 9, 80 N.E. 564, a lumber dealer made a $421.00 mistake in a bid of $1,446.00 to a private contractor resulting from an incorrect addition of an itemized list of figures. The court noted that there was no evidence tending to prove any special circumstances excusing the error and held it to be the result of a want of ordinary care and attention. On the other hand, in *242 the later case of R.O. Bromagin & Co. v. City of Bloomington (1908), Ill. 114, 84 N.E. 700 relief was granted because of a mistake. A bidder in a municipal construction project erred in estimating his bid by inserting in the column set apart for the cost per foot of pipe the weight of the pipe per foot. The proposal was prepared in great haste, the bidder having on the same day received financial backing for the job. The City accepted the bid knowing the mistake had been made. The reviewing court held that the mistake did not show such negligence as would bar relief The court distinguished the case of Steinmeyer v. Schroeppel, supra, in two respects: there was a reasonable excuse for the error in calculating the bid and the party to whom the bid was made knew of the mistake at the time it was accepted.
Courts in other jurisdictions have held that not all negligence will be a bar to rescission. If the mistake is natural to the conduct of the business, or is not the result of culpable negligence or the neglect of some positive legal duty, rescission will be granted. Where the mistake is due to clerical or arithmetic error the courts are nearly unanimous in granting rescission or other appropriate relief. (Annot. 52 A.L.R.2d 792; Pomeroy's Equity Jurisprudence (5th ed. Symons 1941) Vol. 3, sec. 856b.) In City of Baltimore v. DeLuca-Davis Const. Co. (1956), 210 Md. 518, 124 A.2d 557, an error in computation occurred when the figure of $3.34 per cubic yard of excavation, rather than $13.34, was transferred from a detail work sheet to a summary sheet. The bid was prepared by a qualified engineer, and the mistake came about because the "1" in 13.34 was on a veritical ruled line in the work sheet and apparently further obscured by a fold in the paper. The reviewing court denied reformation of the contract but granted rescission. In Kenneth E. Curran, Inc. v. State (1965), 106 N.H. 558, 215 A.2d 702 an error resulted from the fact that the adding machine used in compiling the figures determining the bid was incapable of recording a total of more than $99,999.99. This led to the omission of $100,000.00 during the adding process. In School District of Scottsbluff v. Olson Const. Co. (1950), 153 Neb. 451, 45 N.W.2d 164 an experienced employee of the contractor tabulated estimate sheets and added them up to secure the total amount of the bid. She inadvertently listed an item on the adding machine as $2,689.00 instead of $26,289.00, leading to a bid which was low by the difference of the figures. The bids were prepared hurriedly to meet a deadline. The delay was due to the slowness by subcontractors in submitting their bids and in calculating certain items due to rising costs of labor and materials. In each of these cases, the conduct resulting in the mistake was held to be without negligence or without such negligence as would preclude relief.
*243 The factors in the case at bar do not differ to any great extent from those in the above cases. Kelleher's mistake was not one of business judgment. It did not seek to avoid its contract because of a miscalculation of profit, an overlooked expense or an unforeseen increase in the price of components of its bid  from which consequences a contractor, in retrospect, might attempt to shield itself. The mistake was not due to lack of ordinary care. Some subcontractors and suppliers submitted their quotations at the eleventh hour; the bid was hastily prepared and the error inadvertently made when a secretary misplaced a decimal point. To penalize Kelleher for this simple, honest mistake by enforcing the forfeiture provision of its contract would be unjust.
 3 Where the conditions requisite to relief are present, equity will act in spite of a contract to avoid the unconscionable result. Moffett, Hodgkins & Clarke Co. v. City of Rochester (1900), 178 U.S. 373; M.F. Kemper Const. Co. v. City of Los Angeles (1951), 37 Cal.2d 696, 235 P.2d 7.
 4 All the conditions necessary for recovery were present in this case. The chancellor granted rescission and ordered the return of Kelleher's deposit. The decision was equitable and correct and will be affirmed.
Judgment affirmed.
McNAMARA, P.J., and SCHWARTZ, J., concur.