# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4514

GREY DIRECT, INC.,

*Plaintiff-Appellant,*

*v.*

ERIE INSURANCE EXCHANGE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 5790—**Amy J. St. Eve**, *Judge.*

ARGUED MAY 11, 2006—DECIDED AUGUST 21, 2006

Before POSNER, EASTERBROOK, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* The question in this case is who should bear the loss from a printing company's mistake that wound up costing the company (or a related firm) nearly $1 million. The company, Unicomm Direct ("Unicomm"), assigned its rights under an insurance policy with Erie Insurance Exchange to Grey Direct, Inc., the direct mail company whose work Unicomm was handling. Grey now takes the position that the insurance covered this loss. Erie begs to differ: in its view, Unicomm did not even purchase the relevant coverage until well after the error occurred and the loss was established, and thus Erie had neither a duty to defend nor a duty to indemnify Unicomm. Furthermore, it continues, nothing in the dealings between the parties

supports the notion that Erie graciously agreed after the fact to cover this large known loss. The district court was persuaded by Erie's arguments and granted summary judgment in its favor. Our *de novo* review brings us to the same conclusion; we therefore affirm.

**I**

In 2003, Grey managed an advertising campaign for United Airlines called "Fly Three, Fly Free." Under that program, customers who purchased three round-trip flights on United during a specified time period were entitled to a travel certificate that could be redeemed for one free round-trip flight. Grey decided to hire another firm, CommDirect, a direct-mail advertising production company, to print and mail the travel certificates to qualifying customers. Mary Manade Lipuma is the director, sole shareholder, and only employee of CommDirect. Together with her husband, she also owns Unicomm, which is in the same business as CommDirect.

After Grey hired CommDirect to produce the travel certificates, Lipuma transferred the job to Unicomm. She did not inform Grey about this decision, but the record does not reflect whether there was anything in the agreement with Grey that specifically prohibited subcontracting. On September 11, 2003, Unicomm made a grave error: it mailed *two* travel certificates, instead of one, to roughly 6,000 United customers. Lipuma admitted responsibility for the error on September 18, 2003, in a letter to Grey. Grey indemnified United for the resulting loss, to the tune of $967,720. On December 3, 2003, Grey sued CommDirect; during the course of those proceedings, it learned that Unicomm had actually done the work and committed the error. Upon learning this, Grey voluntarily dismissed the action against CommDirect and filed a new suit for breach of contract against Unicomm, in which it obtained a default

judgment on June 20, 2004, for the full loss, plus court costs and attorney's fees. At that point, the court ordered Unicomm to assign its rights against its insurer, Erie, to Grey.

Unicomm had purchased its business owners' insurance from Erie in August of 2003. The policy, which was issued September 4, 2003, for the period of August 25, 2003, through August 25, 2004, did not include a Printers Errors and Omissions provision. After the expensive September 11 printing error, Grey told Lipuma that she would have to purchase this type of coverage if she wanted to continue to work with Grey. Lipuma accordingly added this coverage to Unicomm's policy on October 23 or 24, 2003; the effective date on the amended declaration page Erie issued at the time was October 15, 2003. Erie charged $54 for the Errors and Omissions provision, pro-rating the price to cover the partial period from October 15, 2003 through August 25, 2004, rather than the full annual fee of $63. Whether later events changed the effective date of the Printers Errors and Omissions provision is a matter of dispute, which we address below.

One month after Grey filed suit against CommDirect, Unicomm sent a copy of the complaint to Erie. That letter, dated January 2, 2004, requests coverage under the Unicomm policy and represents that Grey's complaint was "against the Company [*i.e.*, Unicomm] and Comm-Direct, Inc." The enclosed complaint, however, plainly names only CommDirect as a defendant. Erie responded on January 21, 2004, acknowledging receipt of Unicomm's demand and denying coverage on the ground that the lawsuit did not involve any of the types of injury the policy covered (bodily injury, property damage, personal injury, or advertising injury). Erie reserved the right to assert other grounds for disclaiming coverage, but it did not specifically mention the Errors and Omissions endorsement. Erie did, however, note that "some of the damages being

claimed occurred prior to our policy inception." Unicomm wrote back on February 23, 2004, asserting for the first time that the Printers Errors and Omissions endorsement that had been added after the incident covered the loss; Erie (which claims it never received that letter) stood firm and continued to deny that it had either a duty to defend or a duty to indemnify under the policy. There is no record that Erie was given notice of Grey's second suit, the one against Unicomm, until after the default judgment was entered.

At this point, Grey (Unicomm's assignee) filed the present suit against Erie, alleging that Erie had breached its alleged duties to defend and indemnify Unicomm in the underlying action. The district court found, on Erie's motion for summary judgment, that Erie had no duty to defend, because the September 11, 2003, error was a "known loss" of which Unicomm was aware in October 2003 when it contracted for Printers Errors and Omissions coverage and there was no evidence that the parties intended it to be covered. Finding no disputed issues of material fact, it entered judgment for Erie. Grey now appeals.

## II

Grey offers three reasons why we should reverse the district court: first, that Erie should be estopped from relying on the "known loss" doctrine; second, that the "known loss" doctrine does not apply to a policy document issued after the insurance company has learned about the loss; and third, that Erie is precluded from raising defenses that it did not mention in its reservations of rights letters or in earlier pleadings. Erie's response boils down to the simple assertion that Unicomm's policy did not include coverage for Printers Errors and Omissions until October 15, 2003, well after the date when the loss occurred, and

nothing in Illinois's "known loss" doctrine, rules of estoppel, or other insurance rules required Erie to defend Unicomm. Even taking the facts in the light most favorable to Grey, as we must, see *Valentine v. City of Chicago*, 452 F.3d 670, 677 (7th Cir. 2006), it is hard to imagine what the thread is on which Grey hangs its case. A closer look, however, shows that a single error on Erie's part is what seems to underlie this litigation.

Erie does not keep hard copies of the original insurance policies that it delivers to its clients, because of the prohibitive amount of space this would require. Instead, Erie stores in electronic format the various documents that make up a policyholder's contract. When Erie receives a request from its insured or another authorized person for a copy of a policy, it refers that request to a processor (not to an underwriter). The processor must ascertain whether any endorsements were added after the original issuance of the policy. If, as in the case of the Unicomm policy, there was a later endorsement with a different effective date, the processor must work backwards through the different versions of the policy to arrive at the actual language of the policy on any given earlier date.

In this case, Erie's processor, Rebecca Murzynski, failed to notice that there was an endorsement to the Unicomm policy added effective October 15, 2003. When, in January 2004, she created a paper copy of the policy, she therefore failed to back up and re-create the policy as it had existed prior to October 15, 2003. This meant that the copy of the policy she printed in January 2004 erroneously indicated that Printers Errors and Omissions coverage had existed from the outset (August 2003), rather than only from October 15, 2003. Nonetheless, Grey insists that the January 2004 version of the policy that Murzynski mistakenly generated is controlling, notwithstanding the fact that undisputed evidence shows that it was not until after the September 11 error that Grey

asked Lipuma to procure the additional insurance, and that she did not do so until October 23 or 24 of 2003. In other words, Grey suggests that the copy of the policy re-created months after its purchase materially altered the terms of the contract. But nothing in the record supports this rather outlandish hypothesis. First, other evidence makes it clear that Lipuma purchased the Errors and Omissions provision in October in response to the September 11, 2003, printing mistake so that Grey would continue to work with Unicomm in the *future*. Nothing indicates that either party, at that time, thought that the change would be retroactive. Second, there is no evidence indicating that either Erie or Lipuma asked for a change in terms in January 2004, when Unicomm asked for a copy of the policy. The fact that the insurance company inadvertently provided flawed evidence of the policy, in the form of the computer-generated copy does not change the terms of the contract itself.

Nevertheless, even if we did treat the January 2004 copy as somehow modifying the policy, the September printing error remains a "known loss" that would not be covered by the policy. Illinois, whose law governs here, holds that "the insurer has no duty to defend or indemnify the insured with respect to the known loss *ab initio*, unless the parties intended the known loss to be covered." *Outboard Marine v. Liberty Mut. Ins.*, 607 N.E.2d 1204, 1210 (Ill. 1992). A known loss occurs when "the insured knows or has reason to know, when it purchases a [ ] policy, that there is a substantial probability that it will suffer or has already suffered a loss." *Id*. Viewed from the perspective of October 15, 2003, or any time thereafter, the loss incurred as a result of the September 11 mailing was known. *Outboard Marine* indicates that Erie had no duty either to defend in proceedings relating to that loss or to indemnify any resulting judgment. Even if we thought that Murzynski's January 2004 error had the effect of adding the Printers Errors and Omissions clause to the policy effective

August 2003, it would cover only other unknown events meeting that description, not the September 11, 2003, gaffe, unless there is evidence that the parties intended also to cover the known loss. Grey argues that the January document is exactly the kind of evidence of intent to assume the known risk to which the Illinois Supreme Court referred, but we cannot accept it as such. The loss, recall, was known by that time to be at least $967,720; Unicomm paid $54 for the Printers Errors and Omissions endorsement. It is simply beyond the pale to think that Erie was willing to accept $54 in exchange for a certain duty to pay out nearly a million dollars.

Another way of looking at this problem is through the lens of the doctrine of mistake. The Restatement (Second) of Contracts recognizes that under some circumstances a mistake of one party makes a contract voidable:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
>
> > (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
> >
> > (b) the other party had reason to know of the mistake or his fault caused the mistake.

RESTATEMENT (SECOND) OF CONTRACTS § 153 (1981). See also *People ex rel. Department of Public Works & Bldgs. v. South East Nat'l Bank*, 266 N.E.2d 778, 780-81 (Ill. App. 1971). Here, the relevant time relates to the endorsement to the Unicomm policy. Erie, taking matters as favorably to Grey as we can, thought that the effective date of the endorsement was October 15, 2003; because of Murzynski's mistake, one version of the contract said that the Printers Errors and Omissions coverage had existed from

the start, and thus prior to the September 11, 2003, loss. This mistake has a material effect on the agreed exchange, as we have just noted; the criteria spelled out in § 154 do not suggest that Erie should bear this loss (it was not allocated by the agreement, Erie did not enter into the contract aware that its knowledge was limited about the facts relevant to the mistake, nor is it reasonable for the court to allocate the risk to Erie), see RESTATEMENT (SECOND) OF CONTRACTS § 154; and the effect of holding Erie to the erroneous January version of the policy would indeed be unconscionable. Moreover, the record leaves no doubt that Unicomm had reason to know that it did not have this coverage, well before it received the erroneous version of the policy and long before it filed this lawsuit.

Our view of the case makes it unnecessary to dwell on Grey's other arguments. As the district court held, an insurance company is not estopped from arguing that it should be relieved of a duty to defend, if there was never any such duty in the first place. See *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999) ("Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend. . . . These circumstances include . . . when the policy and the complaint are compared, there clearly was no coverage or potential for coverage."); *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). We thus have no need to speculate about whether the Illinois Supreme Court would hold that the known loss defense is exempt from general estoppel doctrine. Second, we disagree with Grey that Erie waived its arguments that it had no duty to defend Grey's first suit against CommDirect because it never issued a policy to CommDirect, and that it had no duty to defend Unicomm because it did not learn of the new suit against Unicomm until after the default judgment was entered. Erie's answer to Grey's second amended complaint pleaded that CommDirect was never an

insured under any Erie policy. The record is devoid of evidence showing that Erie received actual notice of the second complaint—the one against Unicomm—prior to the time when Grey's counsel sent it a letter in June 2004 alerting it to the default judgment. It is noteworthy, in this regard, that the CommDirect suit and the Unicomm suit were filed under separate docket numbers and heard by two different district court judges. The record thus does not support the proposition that they were really just one big integrated piece of litigation that Erie failed to handle properly.

Finally, there is no evidence suggesting that Erie waived either the known loss defense or any other defenses. To the contrary, its letter of January 21, 2004, said that "Erie Insurance specifically reserves the right to assert such other grounds for disclaiming coverage and/or liability under the policy that may be discovered during the course of Erie Insurance's investigation of the facts [ ] underlying the claim or any claim arising there from [sic] . . . ." Grey suggests that this language does not save Erie, because by January 21, 2004, as a company it already knew about the printing error and thus its known loss defense, and so this was not something it discovered later during the course of its investigation. Erie's actual knowledge about the error changed over time, however. More importantly, we have noted that under Illinois law, a person claiming waiver "has the burden of proving that the insurer's words or conduct were inconsistent with an intent to rely on the provisions of the policy." *Loyola Univ. of Chicago v. Human Ins. Co.*, 996 F.2d 895, 901 (7th Cir. 1993) (citing *Buchalo v. Country Mutual Ins. Co.*, 404 N.E.2d 473, 478 (Ill. App. 1980)). The evidence must be "clear, precise, and unequivocal." *Id.* Grey's evidence of waiver does not satisfy this demanding standard.

### III

The district court correctly ruled that Erie had no duty to defend Unicomm in the litigation over the expensive error it committed on September 11, 2003. Had it not been for Erie's inadvertent printing of a copy of the insurance policy that made it appear that the Printers Errors and Omissions coverage had been in effect throughout the duration of the policy—a proposition that the record unequivocally shows is not correct—this lawsuit could never have been filed. Nothing indicates that Erie had any intention of providing coverage for the known loss from that mistake, nor did any of its actions estop it from taking that position here. The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*